The State ex rel. Getchel vs. Bradish and another.

---

THE STATE EX REL. GETCHEL, Respondent, vs. BRADISH and another, Appellants.

*January 14— February 2, 1897.*

95    205
s37 LRA 289
37 LRA 292n
40 LRA 317n

*Excise: Revocation of license: Disqualification of supervisor.*

Where the chairman of a town board of supervisors hired a minor to buy whisky from a licensed vender, for the purpose of obtaining evidence of his selling liquor to minors, *held*, that such chairman was disqualified from sitting as a member of the board in investigating the matter and revoking the license of such vender, and the action of the board in that matter, he acting as a member, was null and void. MARSHALL and NEWMAN, JJ., dissenting, *hold* that a permit to sell intoxicating liquor is not a vested property right, nor entitled to constitutional protection as such; and that a supervisor who, in the discharge of his duty as such, files a complaint, is not disqualified from acting on the board in investigating and deciding upon the charges.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The case is fully stated in the opinion.

*Herbert L. Sweet*, attorney, and *C. D. Cleveland*, of counsel, for the appellants, argued that the town board acted not in a judicial but in a purely ministerial capacity in the matter of revoking a license, and the prejudice of one member could not invalidate their action. The revocation of a license is not a taking of a property right. *State ex rel. Starkweather v. Common Council of Superior*, 90 Wis. 612.

For the respondent there was a brief by *Hume, Oellerich & Jackson*, and oral argument by *John W. Hume*.

The State ex rel. Getchel vs. Bradish and another.

CASSODAY, C. J.    It appears from the record that July 17, 1895, the town board of *Rushford* granted and issued to the relator a license to sell at retail at the village of Eureka, in said town, intoxicating liquors, to be drunk upon the premises; that upon complaint made and trial had before the town board under sec. 1558 *et seq.*, R. S., the relator was convicted of selling whisky to a minor without the written order of the parent or guardian of said minor, and his license was revoked; that thereupon a writ of *certiorari* was obtained from the circuit court to review such proceeding of the town board; that upon the return thereto, and hearing had, it was adjudged by the circuit court that the proceedings of the town board in the matter of revocation of the liquor license of the relator be in all things annulled, set aside, and held for naught, with costs; that thereupon the trial judge certified to this court that the case necessarily involved the decision of a question or point of law of such doubt and difficulty as to require a decision of the same by this court, and also a construction of the state and federal constitutions as to due process of law; that one W. W. Noble, the chairman of the board, had procured and hired the minor to purchase the whisky for the purpose of procuring evidence against the relator of selling liquor to minors; and that he then sat upon said trial, and participated in the same and in said judgment or determination,— and so submits to this court the following question: Was the chairman disqualified to sit as a member of the board in hearing the case, so as to render the action of the board null and void?

The question submitted for our consideration is not whether the relator was guilty or innocent of violating the statutes cited, but whether the chairman of the town board, after having "procured and hired the minor to purchase the whisky," was a proper person to sit in judgment and determine whether the relator's license should or should not be revoked for selling the whisky. Of course, it is important

that the laws should be enforced, and that every violation thereof should be punished. But it is still more important that, as far as possible, every person accused of an offense should have a fair trial before an impartial tribunal. It is claimed, in effect, that, as there is no provision for changing the venue in such proceeding, the town board must, of necessity, act, regardless of any interest or prejudice on the part of those composing the board. Assuming that this may be true in practice to a certain extent, yet it does not justify members of such board in voluntarily corrupting or prejudicing themselves by advancing money and procuring and abetting the commission of the offense in order that they may pronounce judgment upon the offender who committed the same. The statute disqualifies jurors having an interest, or related to either party, or having expressed or formed an opinion, or being sensible of any bias or prejudice. S. & B. Ann. Stats. sec. 2849. So it disqualifies any judicial officer who is interested in the cause, or who has acted as an attorney for either party thereto, from reviewing in an appellate court what he determined in the trial court, or giving counsel or advice in any matter that may come before him. S. & B. Ann. Stats. secs. 2579, 2580, 2582. Such statutes are confirmatory of the common law. This court has held that the revocation of such license by the board granting it is void, unless made after notice to the licensee and an opportunity given to him to be heard upon the charge made. *Common Council of Oshkosh v. State ex rel. Perkins*, 59 Wis. 425. This is because the license is a vested property right. In *Collins v. Blantern*, 2 Wils. 350, that very able jurist, Lord Chief Justice WILMOT, of the common pleas, quotes approvingly this: "You shall not stipulate or promise to pay money to a man *not to do a crime*." He further states: "You shall not stipulate for iniquity. All writers upon our law agree in this,— no polluted hand shall touch the pure fountains of justice." *Id.* In the case at bar the chairman

of the tribunal to do justice furnished the money, and procured the active agency, in the commission of the offense.

The case of *The Queen v. London County Council* [1892], 1 Q. B. 190, seems to be very much in point. "The London county council delegated to a committee of their body the hearing of applications for music and dancing licenses. The committee, by a majority, recommended that a license which had been applied for should not be granted. The applicant thereupon applied to the county council for a license. At the hearing before the county council, certain members of that body, who were also members of the committee and had voted in the majority against granting a license at the hearing before the committee, instructed counsel to represent them before the county council and oppose the application for a license. The councilors so instructing counsel were present at the hearing, but did not vote. The council, by a majority, refused the application for a license. *Held*, that the presence at the meeting of those members of the county council who had instructed counsel to oppose the application vitiated the proceedings." In the same case it was further held that "the county council, in determining applications for music and dancing licenses, are acting judicially, and are bound by the same principles as are binding on justices in determining questions which come before them for judicial decision." The opinion of the court, quoting approvingly from another case, says: "Of course, the rule is very plain that no man can be plaintiff or prosecutor in any action, and at the same time sit in judgment to decide in that particular case, either in his own case, or in any case where he brings forward the accusation or complaint on which the order is made." *Id.* 195, 196; *Leeson v. General Council*, 43 Ch. Div. 379. This is substantially done in the case at bar. See, also, *Queen v. Huggins* [1895], 1 Q. B. 563, and cases cited in the brief of the relator's counsel. The mere fact that only one of the three members of the board thus dis-

The State ex rel. Getchel vs. Bradish and another.

qualified himself to sit in judgment did not relieve the board, as a whole, from being incompetent. *Id.; Queen v. Justices of Herfordshire,* 6 Q. B. 753; *S. C.* 51 Eng. C. L. 753; *Queen v. Meyer,* 1 Q. B. Div. 173; *Queen v. Justices of Suffolk,* 18 Q. B. 416; *S. C.* 83 Eng. C. L. 416.

The case of *State ex rel. Starkweather v. Common Council of Superior,* 90 Wis. 612, is clearly distinguishable. That was a proceeding by the council, under express statutory authority, to remove the mayor, as a member of that body, and yet it was held that he could not sit as a member of the council upon the trial of charges against himself.

The question propounded is answered in the affirmative.

*By the Court.*— The judgment of the circuit court is affirmed.

MARSHALL, J.   With all that is said in the opinion of the court respecting the importance of maintaining a high standard of judicial purity and of impartiality respecting all persons and bodies of persons charged with the performance of judicial or *quasi* judicial duties, I fully concur, but nevertheless dissent from the conclusion reached in this case, believing that it is inconsistent with well and long settled principles of law.   The decision appears to proceed upon the theory that a license to sell intoxicating liquor is a vested right of property, and that its possessor is entitled to constitutional protection in such possession, as in case of a contract right.   In support of that view, *Common Council of Oshkosh v. State ex rel. Perkins,* 59 Wis. 425, is cited. What there is in that case to sustain such view is not perceived.   The law provides that before a license shall be revoked the licensee shall be notified of the charges preferred against him, and have an opportunity to be heard.   The *Oshkosh Case* turned on the failure to obey the statute in that regard.   No mention is made of the character of the right at all.   The leading case on the subject in this country

is *Metropolitan Board of Excise v. Barrie*, 34 N. Y. 657, where Mr. Justice WRIGHT said: "Licenses to sell liquors are not contracts between the state and the persons licensed, giving the latter vested rights protected by the constitution; nor are they property in any legal or constitutional sense. They have neither the qualities of a contract nor of property, but are merely temporary permits to do what otherwise would be an offense against general law." And further, in effect, the law regulating the subject pertains to the police system of the state, over which the legislature, under the constitution, has general authority; and, pursuant thereto, it may make such laws as it may deem proper, respecting the granting and revocation of licenses. In *Sprayberry v. Atlanta*, 87 Ga. 120, the license was held revoked without notice, consequent on a conviction for violation of the conditions subject to which it was granted. In answer to the contention that a forfeiture of the license without proceedings therefor in a competent tribunal was a violation of the constitutional right of property, Mr. Justice SIMMONS said: "A license to sell liquor is not a contract, but only a permission to enjoy the privilege, on the terms named, for a specified time, unless sooner abrogated. The granting of a license is the exercise of the police powers, and does not include any contractual relation whatever. It is not property, in any sense in which property rights are protected under the constitution." A multitude of authorities could be cited to the same effect, but I content myself with mentioning the following: *Beer Co. v. Massachusetts*, 97 U. S. 25; *La Croix v. Fairfield Co.* 49 Conn. 591; *Comm. v. Brennan*, 103 Mass. 70; *Powell v. State*, 69 Ala. 10; *Fell v. State*, 42 Md. 71; *Constitutional Prohibitory Amendment*, 24 Kan. 700, 724; *Brown v. State*, 82 Ga. 224; *Martin v. State*, 23 Neb. 371; *Hurber v. Baugh*, 43 Iowa, 514; *Comm. v. Kinsley*, 133 Mass. 579. In *Hurber v. Baugh*, *supra*, Mr. Justice ROTHROCK, speaking for the court, said that *State ex*

*rel. Heise v. Town Council of Columbia*, 6 Rich. Law, 404, was the only case they could find holding to the contrary view; and, after a reasonably thorough search at this time, I am only able to add *State ex rel. Shaw v. Baker*, 32 Mo. App. 98.

In view of the foregoing, I feel warranted in vigorously protesting against committing this court to the decision that a permit to sell intoxicating liquor is a vested right of property, and entitled to constitutional protection as such, and to insist that it is a mere permit, the granting, refusing, and revoking of which are subject to regulation by legislative authority without constitutional restriction. So long as the proceeding for such granting, refusing, or revocation conforms to legislative requirements, it cannot properly be questioned in any tribunal as a violation of constitutional rights.

It is said in the opinion of the court that the question here presented is distinguishable from that in *State ex rel. Starkweather v. Common Council of Superior*, 90 Wis. 612, but wherein is not stated. To be sure, the court say that was a proceeding under express statutory authority, but so is a proceeding to revoke a license, and the modes of procedure in both are almost precisely the same. The court further say that it was there held that the mayor could not sit as a member of the council while he was on trial. Why prominence should be given to that fact, when no such question is presented in this case, and the fact be overlooked that the court also distinctly held that the person who signed the complaint against the mayor, and appeared in the role of prosecutor as well, properly participated in all the proceedings as one of the triers, when that is the very question here involved, is not perceived. If my brethren say that the two cases are distinguishable, in that this case involves a vested right of property, and that the *Stark-weather Case* did not, but a mere privilege, that is un-

founded, as we have clearly shown. Of the right involved in the former case, Mr. Justice WINSLOW, in substance, said: It was not a vested right of property. The legislature, which created the office, had the undoubted right to make provision for removing an incumbent therefrom, there being no constitutional restrictions in the way. So long as the body clothed with the power to make such removal complied with the required procedure in that regard, such proceedings were not open to question; hence the fact that one of the members of the council who signed the charges appeared in the double capacity of prosecutor and trier did not affect the validity of the result. That conclusion certainly was warranted, in view of the fact that the vote of the interested person did not determine such result. It will be seen that the right involved, properly understood, was not a right of property, in either case, but was a privilege, in the one case, conferred by legislative authority, under constitutional power, to create and provide for the government of municipal corporations; and in the other it was a mere permit to engage in a traffic, granted pursuant to legislative regulations in the exercise of its general police powers, over which there are no constitutional restrictions. While it was said in the *Starkweather Case* that the duties of the removing body were ministerial in character, in the same sense proceedings to revoke a license are ministerial. The procedure prescribed by statute is of a judicial nature, and the power exercised, strictly speaking, is of a *quasi* judicial character in both cases. So there is absolutely no distinction between the two cases, respecting the character of the right involved or the nature of the proceedings. In my opinion the *Starkweather Case* was rightly decided, and rules this case in favor of a negative answer to the question certified to this court.

I am not unmindful of the fact that the foregoing is not in accordance with the English rule, which this court has seen fit to adopt. I am unable to find authority elsewhere

to support such rule, and may safely venture to say that none exists, for the reason that none is referred to by my brethren. The furthest our courts have gone on the subject is to hold that, if the presence of the interested member of the tribunal is necessary to make a quorum, or his vote to determine the result, the proceedings are void. In *Stockwell v. White Lake*, 22 Mich. 341, where the proceedings were to remove a school-district officer, the rule was stated thus: " Such a proceeding is in the nature of a judicial investigation, and, when one member of the board is interested in the subject of the complaint, his presence thereon, if necessary to a quorum, renders the proceedings void." See, also, to the same effect, Throop, Pub. Off. § 379; *Foster v. Frost*, 25 Neb. 731; and *State ex rel. Cornell v. Kaso*, 25 Neb. 607.

But there is a further very cogent reason why Supervisor Noble, though he signed the complaint, properly participated in the subsequent proceedings. By sec. 1553, S. & B. Ann. Stats., it is made one of the duties of supervisors to enforce the laws respecting the sale of intoxicating liquor; and to that end they are required to make complaints and institute criminal prosecutions in all cases where they know, or are credibly informed, of any violation of the liquor laws. We cannot subscribe to the doctrine that if a supervisor performs a duty commanded by statute, under a severe penalty for failure so to do, he thereby " corrupts himself," and becomes disqualified from performing another duty also strictly enjoined upon him by legislative enactment. Performance of both duties must have been in contemplation by the legislature, for no provision was made for filling a supervisor's place on the board, on a hearing to revoke a license, when such supervisor shall have instituted proceedings against the licensee for violation of the excise law. Whether it is good policy to impose upon supervisors the double duty mentioned is something with which we have nothing to do. Being mere police regulations, as before stated, within the scope of ·the

general police powers of the state, they cannot be questioned by the court on constitutional grounds. The supervisors may perform both duties, and the performance of one constitutes no disqualification for the performance of the other. Such was the determination in *People ex rel. Skahan v. Board of Police Comm'rs of New York*, 10 Hun, 106, affirmed in 76 N. Y. 613. Such rule seems to follow necessarily from the state of the law and the nature of the duties under consideration.

Further discussion is unnecessary to state clearly the reasons for my dissent from the opinion of the court. To recapitulate briefly, I hold that the following principles of law govern this case:

1. A license to sell intoxicating liquor is not a right of property, or a contract right, or property in any sense, to be protected under the constitution, but is a mere permit, granted in the exercise of the general police powers of the state, to carry on an occupation under such regulations, and subject to revocation in such manner, as the power granting the same may see fit, by legislative enactment, to provide.

2. A supervisor who files a complaint against a licensee to sell intoxicating liquors, for a violation of the conditions under which such license is held, is in no event, from that fact alone, disqualified from investigating the truth of such complaint and deciding thereon, as a member of the board charged with that duty, unless his presence be necessary to a quorum or his vote determines the result.

3. Where a statute, as in this case, requires a supervisor to institute proceedings against an offending licensee for the violation of the conditions of his license upon receiving knowledge of such violation, and also imposes upon such supervisor the duty of investigating charges and deciding thereon, in proceedings to revoke such license for such violation, his compliance with the law in one capacity will not operate to disqualify him from acting in the other.

In the foregoing we have not seen fit to notice the fact that Supervisor Noble furnished the opportunity for the licensee to violate the law. Whether his conduct in that regard constitutes such overzealous activity in the detection and prosecution of persons reputed to be violating the liquor laws as to legitimately subject him to criticism, has really nothing to do with the principles here discussed, and upon which the answer to the question certified turns.

NEWMAN, J. I concur in the above opinion of MARSHALL, J.