## STATE OF NORTH DAKOTA EX REL. WILLIAM LANGER, Attorney General, v. CARL R. KOSITZKY, as State Auditor.

(L.R.A.1918D, —, 166 N. W. 534.)

**Supreme court — member of — disqualification of — interest in suit pending before — presence of on bench — participation in hearing — proceedings of court — not void by reason thereof — quorum — vote of such member — not necessary for — district judges — may be called to sit.**

1. The mere presence of, and participation by, a member of the supreme court in a case in which he may be disqualified on account of his interest in the result, does not render the proceedings and judgment of the court in that case void, where his presence is not necessary to constitute a quorum, and his vote does not determine the result, although § 100 of the state Constitution provides that, in case a judge of the supreme court shall be in any way interested in a case brought before said court, the remaining judges of said court shall call one of the district court judges to sit with them in the hearing of said cause.

Supreme court — always open — writs and orders — district judges called in — order and writs issued and signed by — force and effect of — judges of supreme court — same as.

2. Under § 7340, Comp. Laws 1913, providing the supreme court shall be always open for the issue and return of all writs which it may lawfully issue, and that any judge of said court may order the issuance of any such writ, an order for the issuance of an alternative writ of mandamus, signed by a district judge who, under N. D. Const. § 100, had been called in to sit in the place of a member of said court who was disqualified by reason of his interest, was legally issued.

Writ of mandamus — issued by supreme court — directed to state auditor — warrants for salary of supreme court judges — requiring issuance of — expenses also — payment of — prerogatives — rights — franchises — involves — original jurisdiction.

3. On application to the supreme court for a writ of mandamus directed to the state auditor, to require him to issue his warrant upon the state treasurer for the payment of the expenses of the judges of the supreme court, without the filing of an itemized statement, as provided by § 720, Comp. Laws 1913, and by said § 720, as amended by § 2, chap. 224, Laws 1917, involves the prerogatives, rights, and franchises of the state government, and invokes the original jurisdiction of the supreme court.

Supreme court — judges of — expenses of — paid quarterly — no itemized statements required — legislative act providing for — constitutional.

4. Section 720, Compiled Laws 1913, providing that each judge of the supreme court shall receive the sum of $500 per annum for expenses, to be paid in quarterly payments without filing any itemized statements, is not, if interpreted as providing an additional compensation for the services of the judges of such court, so far as the judges now in office are concerned, unconstitutional as being in violation of § 99 of the state Constitution, providing that the compensation for the services of a judge of the supreme court shall not be increased or diminished during the term for which he shall have been elected.

Supreme court — judges of — salary of — expenses of — act providing for — Constitution — not violated.

5. Section 720, Comp. Laws 1913, and the said section as amended by § 2, chap. 224, Laws 1917, providing that each judge of the supreme court shall receive the sum of $500 per annum for expenses, to be paid in quarterly payments without filing any itemized statement, if interpreted as providing for the payment of "expenses" rather than for "services," are not unconstitutional as being in violation of either § 99 of the Constitution, providing that the compensation for the services of a judge of the supreme court shall not be increased or diminished during the term for which he shall have been elected, or of § 186 of the state Constitution, providing that no bills, claims, accounts, or demands

against the state shall be audited, allowed, or paid until a full itemized statement shall be filed with the officer or officers whose duty it may be to audit the same.

Opinion filed January 24, 1918.

Application by the State of North Dakota, upon the relation of the Attorney General for a writ of mandamus against Carl R. Kositzky, as State Auditor.

Writ allowed.

*Wm. Langer,* Attorney General, and *D. V. Brennan,* Assistant Attorney General, for petitioner.

"It is elementary, 'except as limited by constitutional provisions,' that the legislature has control over the finances of the state; that its power as to the creation of indebtedness, or the expenditure of state funds, or making appropriations, is plenary, and the exercise of this power cannot be controlled or reviewed by the courts." 36 Cyc. 882.

The state auditor derives his powers from legislative enactments; his duties are all prescribed by statute. N. D. Const. § 83.

It was not, and is not, the duty of the attorney general to act for the state auditor in any matter of this nature. It is the duty of the attorney general to give counsel and advice to state officers when called upon, and this duty was performed in the present instance. Comp. Laws 1913, § 157.

"The law neither does nor requires idle acts." Comp. Laws 1913, § 7266.

"When the reason of a rule ceases, so should the rule itself." Comp. Laws 1913, §§ 7243, 7244.

The legislature did not intend that the state auditor should pass upon or audit the quarterly expense allowance of the justices of the supreme court. The legislature itself made audit of such accounts or allowances. It provided certain sums, payable to certain officers at certain times. It is not the function of courts to review the correctness of legislative determination; "for it must be presumed that the legislature had before it when the statute was passed, any evidence that was required to enable it to act, and the passage of the statute must be deemed a finding by the legislature of the existence of the fact justify-

ing the enactment thereof." State ex rel. Linde v. Packard, 35 N. D. 298, 317, L.R.A.1917B, 710, 160 N. W. 150.

"One who is not prejudiced by the enforcement' of an act of the legislature cannot question its constitutionality or obtain a decision as to its invalidity on the ground that it requires the rights of action." 6 R. C. L. pp. 89, 90.

Mere ministerial officers of the state cannot ignore the mandates of the law and decide for themselves the invalidity thereof. 6 R. C. L. p. 92.

The constitutional provision relied upon by respondent applies only to claims which it is made the duty of some officer or board to audit. It does not apply where the legislature has itself determined the amount to be paid, to whom, and when to be paid. State ex rel. McCue v. Lewis, 18 N. D. 125, 134, 119 N. W. 1037.

This court has original jurisdiction in such actions and proceedings as the one at bar. State ex rel. Birdzell v. Jorgenson, 25 N. D. 539, 49 L.R.A.(N.S.) 67, 142 N. W. 450; State ex rel. Packard v. Jorgenson, 31 N. D. 563, 154 N. W. 525.

The power to set at naught a legislative enactment is great and one which even the courts are reluctant to exercise. State ex rel. Linde v. Taylor, 33 N. D. 85, L.R.A.1918B, 156, 156 N. W. 561.

*Theodore Koffel,* for respondent.

If all the facts present a case permitting the exercise of original prerogative jurisdiction, then the court has a discretion depending upon the particular facts in the case whether to issue the writ. State ex rel. Miller v. Norton, 20 N. D. 180, 127 N. W. 717.

The mere fact that delays would occur if these cases were originally commenced in district court does not present such exceptional circumstances as would constitute a reason for issuing a writ of mandamus by the supreme court to compel action by officers in such matters. State ex rel. Murphy v. Gottbreht, 17 N. D. 543, 117 N. W. 864; State ex rel. Minehan v. Wing, 18 N. D. 242, 119 N. W. 944.

In such proceedings the rights, franchises, privileges, and prerogatives of the sovereignty of the state are not involved to the extent that such original jurisdiction shall be invoked. The petitioner has a plain and adequate remedy at law. State ex rel. McDonald v. Holmes, 16

N. D. 457, 114 N. W. 367; State ex rel. Shaw v. Thompson, 21 N. D. 426, 131 N. W, 231.

There is no extraordinary or peremptory demand or call for the exercise of such jurisdiction in this case. State ex rel. Birdzell v. Jorgenson, 25 N. D. 539, 49 L.R.A.(N.S.) 67, 142 N. W. 450; State ex rel. Wiles v. Albright, 11 N. D. 22, 88 N. W. 729; State ex rel. Wiles v. Heinrich, 11 N. D. 31, 88 N. W. 734.

"No warrant shall be drawn except approved by the auditing board." Comp. Laws 1913, § 375.

The enactment here under consideration was passed to provide the judges with expenses while absent from their usual place of work, and to allow the judges for such, without an itemized statement thereof, and the auditing of the same by the proper board would violate the Constitution. Const. § 99; McCoy v. Handlin, 35 S. D. 487, L.R.A. 1915E, 858, 153 N. W. 361, Ann. Cas. 1917A, 1046; 6 R. C. L. pp. 115–485; Const. § 186; Houtz v. Uinta County, 11 Wyo. 152, 70 Pac. 840.

CHAS. M. COOLEY, District Judge. This is an original proceeding in the supreme court for a writ of mandamus directing and commanding the state auditor to forthwith credit to the account of the supreme court of the state of North Dakota the appropriation for the additional compensation of the members of said court, provided for in subdivision 3 of chapter 24 of the Laws of 1917, and to issue to the several justices of said court warrants for the quarterly instalments of said additional compensation which became payable at the quarterly periods since on or about January 1, 1917, without the filing of an itemized statement therefor.

This proceeding was instituted by an application to the supreme court for an order directing the issuance of an alternative writ. When the application for such order was presented to the court, four of its five members, deeming themselves disqualified to sit in a matter involving their right to the compensation which is the subject of this controversy, withdrew from any participation in the proceedings, and the remaining member of the court, Justice Robinson, under the provisions of § 100 of the state Constitution, called in four district judges, to wit, W. L. Nuesle, Judge of the Sixth Judicial District; A. T. Cole,

Judge of the Third Judicial District; J. A. Coffey, Judge of the Fifth Judicial District, and Chas. M. Cooley, Judge of the First Judicial District, to sit with him in the further proceedings that might be had in said cause. Justice Robinson and two of the district judges, thus called in, signed the order for the issuance of the alternative writ which was made returnable on December 1, 1917. On that date the supreme court of North Dakota, as above constituted, assembled in the court room of the said court, and heard and considered the issues raised by the alternative writ and the respondents' return thereto.

At the outset objection was made to the jurisdiction of the court on the grounds: (1) That J. E. Robinson, one of the justices of the said court, was disqualified from acting in the matter because of his interest in the result; (2) that the order for the alternative writ was not signed by a majority of the members of said court qualified to act; and (3) that the case is not of public concern involving questions affecting the sovereign rights of the state or its franchises or privileges. It is unnecessary to determine whether Justice Robinson, because of any interest in the result, was disqualified to sit as a member of this court upon the hearing and determination of the issues in this proceeding. The fact remains, that the court, as constituted, included four district judges qualified to act, and who constituted a quorum, and a majority of the members of said court, and who were invested, so far as this controversy is concerned, with the same power and authority, and whose judgment is entitled to the same force and effect as that of the justices who are the regularly elected members of the court. State ex rel. Linde v. Robinson, 35 N. D. 410, 160 N. W. 512; State ex rel. Linde v. Robinson, 35 N. D. 417, 160 N. W. 514.

The mere presence of, and participation by, a member of a judicial body disqualified to act in a particular case, does not necessarily invalidate the proceedings and judgment of that body. Particularly is this true if his presence is not necessary to constitute a quorum, or his vote does not determine the result. State ex rel. Getchel v. Bradish, 95 Wis. 205, 37 L.R.A. 289, 70 N. W. 172, dissenting opinion of Justice Marshall.

Neither under the Constitution nor the statutes of this state is any person or body of persons invested with the power to prevent a justice of the supreme court, disqualified on account of interest from partici-

pating in any case properly coming before that court, nor under the Constitution of this state is the legislature empowered to make any provision for the transfer for any such case to any other jurisdiction.

To hold that the mere participation by any justice of the supreme court in a case in which he is disqualified to act would invalidate the proceedings and judgment of the court, would give to such justice the power, if he so willed, to absolutely bar the door of justice, which should be open to all, against one of the parties. While the Constitution of South Dakota contains no provision for the calling in of other judges in case any member of the supreme court is disqualified for any reason, much of the reasoning of the supreme court of that state in the case of McCoy v. Handlin, 35 S. D. 487, L.R.A.1915E, 858, 153 N. W. 361, Ann. Cas. 1917A, 1046, is applicable to the condition here presented.

Inasmuch as the district judges who were called in, to sit in the place of those who deemed themselves disqualified, became, when so-called, so far as this case is concerned, judges of the supreme court, the order for the alternative writ, which was signed by two of such judges, was legally issued under § 7340, Comp. Laws 1913, which provides that the supreme court shall be always open for the issue and return of all writs which it may lawfully issue, and that any judge of said court may order the issuance of any such writ.

That the proceedings involves the rights, franchises, and privileges of the state government, and that this court had constitutional and statutory authority to exercise original jurisdiction herein, is well settled by the decision of this court in the case of State ex rel. Linde v. Jorgenson, 25 N. D. 539, 49 L.R.A.(N.S.) 67, 142 N. W. 450, wherein a similar principle was involved, the difference between the two cases being only in the extent to which the rights, franchises, and privileges of the state were affected.

Upon the merits, this controversy involves the question of the interpretation and constitutionality of § 1, chap. 82, of the Session Laws of 1907 (§ 720, Comp. Laws 1913), and of said § 720, Comp. Laws 1913, as amended by § 2, chap. 224, of the Session Laws of 1917.

Section 1, chap. 82, Laws 1907, provides: "Each judge of the supreme court of this state shall receive the sum of $500 per annum for traveling expenses and moneys expended by him while absent from

his home and while engaged in the discharge of his official duties, to be paid in quarterly payments without filing any itemized statement."

Section 2, chap. 224, Laws 1917, provides: "Each judge of the supreme court who, on account of his official position, has taken up his residence at the capital of this state, or who has been or who may be compelled to absent himself from his legal residence in order to properly discharge his official duties, shall, during his present term of office, receive the sum of $500 per annum for traveling expenses and moneys expended by him while engaged in the discharge of his official duties, to be paid in quarterly payments without filing any itemized statement; provided, however, that the provisions of this section shall not apply to any judge of the supreme court hereafter elected or appointed."

The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the legislature, and it is true that this intention "must be the intention as expressed in the statute; and where the meaning of the language used is plain, it must be given effect by the courts, or they would be assuming legislative authority." 36 Cyc. 1106. But it is also true that "every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of it enactment, the defects or evils in the former law, and the remedy provided by the new one; and the statute should be given that construction which is best calculated to advance its object by suppressing the mischief and securing the benefits intended. For the purpose of determining the meaning recourse may be had to considerations of public policy, and to the established policy of the legislature as disclosed by a general course of legislation. If the purpose and well-ascertained object of a statute are inconsistent with the precise words, the latter must yield to the controlling influence of the legislative will resulting from the whole act." 36 Cyc. 1110.

In pursuance of the general object of enforcing the intention of the legislature it is a rule that the spirit or reason of the law will prevail over its letter. 36 Cyc. 1108.

While, therefore, in both the acts of the legislature above referred to, provision is made for the payment of "expenses," it is proper in inter-

preting these acts to consider other acts of the legislature relating to the same subject-matter, and other parts of the same acts.

In 1903, the annual salary of a judge of the supreme court was $4,000. In that year the legislature passed an act (Laws 1903, chap. 194) which is as follows:

"Sec. 1. Each judge of the supreme court shall, during his present term of office, receive the sum of $100 per month for the purpose of defraying the personal expenses of such judge when away from home in the discharge of the duties pertaining to his office, and for other necessary expenses. Such amount to be payable monthly without the filing of any itemized statement; provided, that the provisions of this section shall not apply to judges hereinafter elected.

"Sec. 2. The judges of the supreme court shall receive an annual salary of $5,000, the payment thereof to begin at the expiration of the present term of each of the present incumbents, and until the expiration of the present term of each of said judges he shall receive an annual salary of $4,000."

On the 1st of January, 1907, § 1, chap. 194, Laws of 1903, became ineffective, as the term of each of the judges in office at the time of the passage of the act had expired, and all were thereafter entitled to an annual salary of $5,000. At the legislative session in 1907, chap. 82, Laws of 1907, above quoted, was passed, and went into effect on its approval by the governor, on March 19, 1907. When the 1913 edition of the Compiled Laws was published, so much of § 2, chap. 194, Laws of 1903, as was then applicable, namely, "the judges of the supreme court shall receive an annual salary of $5,000," appeared as § 719, and § 1, chap. 82, Laws of 1907, appeared as § 720.

At the 1917 session of the legislature an act was passed (Laws 1917, chap. 198) repealing § 720, Comp. Laws 1913. This law did not take effect until July 1, 1917. At the same session there was passed an act (Laws 1917, chap. 224) which provides as follows:

"Sec. 1. Section 719 of the Compiled Laws of North Dakota for the year 1913 is hereby amended and re-enacted so as to read as follows:

" 'Sec. 719. The judges of the supreme court shall each receive an annual salary of $5,500. Provided, however, that the provisions of this

section shall not apply to said judges during their respective present term of office.' "

"Sec. 2. § 720 of the Compiled Laws of North Dakota for the year 1913 is hereby amended and re-enacted so as to read as follows:

" 'Sec. 720. Each judge of the supreme court who on account of his official position has taken up his residence at the capital of this state or who has been or may be compelled to absent himself from his legal residence in order to properly discharge his official duties shall, during his present term of office, receive the sum of $500 per annum for traveling expenses and moneys expended by him while engaged in the discharge of his official duties, to be paid in quarterly payments without filing any itemized statement; provided, however, that the provisions of this section shall not apply to any judge of the Supreme Court hereafter elected or appointed.' "

Thus it will be observed that from 1903, when the salary of the judges of the supreme court was $4,000, their compensation for services has been raised until it is now fixed at $5,500.

If, in arriving at the intention of the legislature when it enacted § 1, chap. 82, Laws 1907, and § 2, chap. 224, Laws 1917, we are permitted to disregard the strict letter of the law, and to consider the spirit or reason of the law, and the object intended to be accomplished, it requires but a casual observation of the various acts which have been quoted to determine that it was the evident intention of the legislature thereby to increase the salary of the then judges of the supreme court, and that the legislature adopted this form of granting this additional compensation in an attempt to avoid the prohibition contained in the North Dakota Constitution, § 99, which provides: "The judges of the supreme and district courts shall receive such compensation for their services as may be prescribed by law, which compensation shall not be increased or diminished during the term for which a judge shall have been elected."

All of the judges of the supreme court now in office were elected for terms which began subsequent to the enactment of § 720, Comp. Laws 1913 (§ 1, chap. 82, Laws 1907) and prior to the time when chap. 198, Laws 1917, repealing said § 720, took effect. Therefore, considered as an act providing for additional compensation for services, § 1, chap. 82, Laws 1907 (§ 720, Comp. Laws, 1913), is not, as to the present

38 N. D.—40.

judges, in violation of the constitutional provision above quoted. Nor is the right of the present judges to continue to receive such additional compensation until the expiration of their present terms affected by chap. 198, Laws 1917, repealing said § 720, as that act is unconstitutional as diminishing their compensation for services during the terms for which they have been elected.

But respondent contends that § 1, chap. 82, Laws 1907, and § 2, chap. 224, Laws 1917, should receive a literal interpretation, and that these acts provide for additional compensation for "expenses" rather than for "services." Under that interpretation neither of these acts is unconstitutional, as being in violation of § 99 of the Constitution; for that constitutional provision prohibits, during the term for which a judge is elected, only an increase in his compensation for services, and each of the present judges was entitled to receive the additional compensation provided for by the former act until July 1, 1917, and are entitled to receive the compensation provided for by the latter act until the expiration of their present terms.

Respondent does not contend that the judges are not entitled to this additional compensation under any circumstances; but his contention is that, as far as these acts require the quarterly payments to be made "without filing any itemized statement," they are void, as being in violation of § 186 of this Constitution of this state, which provides: "No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or other political subdivision, shall be audited, allowed or paid until a full itemized statement in writing shall be filed with the officer or officers whose duty it may be to audit the same."

To audit a claim, account, or demand, means to examine, adjust, pass upon, and settle such claims, account, or demand. An audit of claims and accounts is required for the purpose of determining the amount, if any, to be paid. It involves an exercise of discretion by the auditing officer or board. Under the provisions of the acts in controversy, the amount, the time of payment, and the persons to whom payment shall be made, have been fixed and designated by law, so that there remains nothing for the respondent to do but to perform the

ministerial duty of issuing his warrants to each judge for the amount so fixed.

In the case of McCoy v. Handlin, 35 S. D. 487, L.R.A.1915E, 858, 153 N. W. 361, Ann. Cas. 1917A, 1046, it appears that an act of the legislature of South Dakota provides that when a judge of the supreme court, not legally a resident at the state capital, shall have changed his actual residence thereto, there shall be paid to such judge, for his increased expenses of living, the fixed sum of $50 per month, payable on the certified vouchers of such judge. The court say: "When a claim, based upon a valid law has once been audited and allowed by the auditor himself, or by some other duly authorized person, board, or tribunal, *or the amount thereof is fixed by law,* so that there is no dispute as to the *amount* of the claim, it then becomes the duty of the auditor to allow it, and to issue a warrant upon the state treasurer therefor, provided, of course, that money has been appropriated for the payment thereof. . . . The claim is audited at a fixed amount by the law itself. The defendant is vested with no discretion whatever in the matter of allowing the said sum of money. Mandamus is the proper mode of compelling him to perform the purely ministerial act of issuing the warrant."

Moreover, before it shall become necessary to file with any officer or officers an itemized statement of any claim, account, or demand against the state, or against a county, it must be made to appear that there is some officer or officers "whose duty it may be to audit the same."

It will be noted that the provisions of § 186 of the Constitution relate to the audit of claims and accounts against counties, as well as to those against the state. Yet § 3369, Comp. Laws 1913, provides that the county auditor "shall draw warrants . . . for all debts and demands against the county when the amounts are fixed by law, and which are not directed to be audited by some other person or tribunal." By this latter provision there are excepted from the operation of the constitutional provision all debts and demands against counties when the amounts are fixed by law, and which are not directed to be audited by some other person or tribunal, there being no person whose duty it is to audit such debts and demands.

In the case of the State ex rel. Wiles v. Heinrich, 11 N. D. 31, 88

N. W. 734, the court, referring to the salaries of clerks employed in the office of the county superintendent of schools, say: "The demand of clerks so employed are not fixed by law, and could not, therefore, be audited and paid by the county auditor, as in the case of salaries. . . . The board of county commissioners have the general superintendence of the fiscal affairs of the county, and constitute a board of audit for all claims and demands against their counties, the amounts of which are not fixed by law."

In the case of the State ex rel. Wiles v. Albright, 11 N. D. 22, 88 N. W. 729, the court say: "In ordinary cases of salaries fixed by law, and not paid and actually due, it is not denied that the absolute duty to issue warrants therefor devolves upon the auditor, under the statute, and that he is not bound to submit to the directions of the county commissioners, or anyone else, to withhold the issuing of such warrants. In such cases he has no discretion. The law will compel him by mandamus, to issue warrants for such salaries. In those cases his acts are ministerial merely."

In the case of the State ex rel. McCue v. Lewis, 18 N. D. 125, 119 N. W. 1037, the court had under investigation § 1167, Rev. Codes 1905, as amended by chap. 237, Laws 1907. This section provides that if the county judge of the county from which an indigent inmate of the Institution for the Feeble-Minded is admitted shall certify that such inmate is unable to pay the sum of $50 semiannually to the said institution, it is made the duty of the county auditor to transmit a county warrant for $50 semiannually for each patient so situated, upon presentation of the proper certificate of the superintendent of said institution. Proper certificates were presented to the county auditor of Cass county, and a demand was made upon him for his warrant for the sum of $50 for each of three indigent inmates of said institution from said county. Upon his refusal to comply with such demand, mandamus proceedings were instituted against him. On the part of the respondent, the county auditor of Cass county, it was contended that the act in question contravened § 186 of the Constitution. In answer to that contention, the court said: "Furthermore, § 186 by its language clearly applies only to those accounts or demands, the audit of which is made the duty, by law, of some officer; and, under the act in question, there

is no duty devolving upon the county auditor to audit the claims therein mentioned."

Subdiv. 10 of § 132, Comp. Laws of 1913, provides that it shall be the duty of the state auditor "to audit all claims against the state the payment of which is authorized by law."

This provision made its first appearance in subdiv. 10, § 98, Rev. Codes 1895, and has since been continued in the various revisions and compilations of the Political Code, although it was impliedly repealed by chapter 33, Laws of 1901, by which was created a state auditing board whose duty it was to audit all claims that might come before it. This act, in amended form, appears as § 375 of the Comp. Laws of 1913. By chapter 227, Laws 1915, § 375, Comp. Laws 1913, was further amended. Among other things the said § 375, as amended, provides: "The state auditor shall act as secretary of the state auditing board, and shall receive and file for the consideration of the state auditing board all accounts, claims, or demands against the state, *except such as are now specifically excepted by law.  .  .  .* It shall be the duty of the state auditing board to audit all claims, accounts, bills, and demands against the state, *except such as are now specifically excepted by law.  .  .  .* "

There is no officer or officers whose duty it is to audit claims and accounts against the state, other than the state auditing board; and it is apparent that it is not the duty of this board to audit any claim or demand against the state that has been specifically excepted by law.

Section 657. Compiled Laws 1913, provides that "no bill, claim, account or demand against the state, *except in cases of salaries* fixed by law, shall be audited, allowed or paid until a full itemized statement in writing shall be filed with the officer or officers, whose duty it may be to audit the same."

This is a specific provision of law excepting salaries from the claims and demands that must be itemized and filed for audit with the state auditing board, and § 1, chap. 82, Laws 1907, and § 2, chap. 224, Laws 1917, are other specific provisions of law of like character.

These acts constitute valid annual appropriations of $500 for each judge of the supreme court. State ex rel. Birdzell v. Jorgenson, 25 N. D. 539, 49 L.R.A.(N.S.) 67, 142 N. W. 450. They contain no provision requiring the quarterly instalments to be audited by any-one. It was entirely competent for the legislature to thus make and

audit its appropriations, and no duty devolves upon the state auditing board, or upon any officer, to audit any claim based upon either of said acts. Inasmuch as there is no officer or officers whose duty it is to audit such claims, there is no officer or officers with whom itemized statements of any such claims must be filed.

Appropriations having been made, not only by the terms of these acts, but by the general budget acts, for the payment of the claims and demands arising under those acts, and the amount of such claims having been fixed by law, and there being no officer or officers whose duty it is to audit such claims, it becomes the ministerial duty of the state auditor, under the provisions of said acts, to issue his warrants for the payment thereof at the times as provided by law.

A peremptory writ will, therefore, issue as prayed.

BRUCE, Ch. J., and CHRISTIANSON, BIRDZELL, and GRACE, JJ. did not participate. Hon. CHAS. M. COOLEY, Hon. A. T. COLE, Hon. J. A. COFFEY and Hon. W. L. NUESSLE, District Judges of the State of North Dakota, sitting by request.

ROBINSON, J. I concur in result.

ROBINSON, J. (concurring). This is an application for a mandamus commanding the state auditor to give to each judge of the supreme court a voucher or warrant for the regular allowance of $500 a year to be paid quarterly as provided by the Laws of 1907, chapter 82.

The statute is in effect: Each judge of the supreme court shall receive the sum of $500 per annum for expenses, to be paid quarterly without filing any itemized statement. It is claimed that this act is void because it does not expressly limit the allowance of $500 a year to judges afterwards elected, and it does not limit the allowance to actual expenses. The act gives a definite allowance to be paid quarterly regardless of any expense. At four successive sessions of the legislative assembly an appropriation has been made for the payment of such allowance, and the same has been regularly paid to the judges until the commencement of the present year.

Allowing for argument that the act did apply to judges then in office, it may be divided into two parts, thus:

1. Each judge of the supreme court now in office shall receive the sum of $500 per annum, payable quarterly.

2. Each judge of the supreme court who may be hereafter elected to office shall receive the sum of $500 per annum payable quarterly. Now if the statute is held void so far as it relates to the judges then in office, manifestly that is no reason for holding it void as to future judges. As to them it can never be claimed that the effect of the statute was to increase their salary or compensation during their term of office. That is self-evident.

It is claimed that the primary purpose of the act was to reimburse the judges for a part of their expenses, and to fix and limit the amount payable without any accounting or auditing, and that such an act is forbidden by the Constitution. It is true that such acts have been frequently passed and sustained. However, this case in no way relates to the right of judges who held office when the act was passed, and on that question it is needless for the court to express an opinion. As to the judges now in office, there is no ground for questioning the constitutional validity of the act.

This proceeding is not in the nature of an action against the state or the state auditor. It is an application by the state to determine the law for the state auditor, and to require him to perform a plain ministerial duty on which he has no discretion. It is a matter of public right and duty relating to the sovereignty of the state. The state auditor might put the state in a deplorable condition were it permissible for him to refuse a voucher to every state officer for his salary or allowance provided by law. No judge would care to hold office if he had to receive his monthly allowance at the end of a suit in the district court and an appeal to the supreme court, and then by a mandamus proceeding to compel payment.

In regard to the right of Justice Robinson to sit in the case, he holds it is a matter of manifest duty and necessity for one of the supreme court judges to sit in every case that comes before this court. Section 100 of the Constitution provides that in case a judge of the supreme court shall be in any way interested in a cause brought before said court, the remaining judges of said court shall call one of the district judges to sit with them on the trial of said cause. The Constitution does not authorize the supreme court judges to improvise a new supreme court composed entirely of district judges. At least one of the supreme court justices must sit in every case that comes before the

court. The case really presents no question of law. It is the plain ministerial duty of the state auditor to give each judge of the supreme court a voucher or warrant for his quarterly allowance accruing since January 1, 1917, as provided by chapter 82, Laws of 1907, and a peremptory mandamus be issued commanding him to give such voucher.