IN RE MURCHISON ET AL.

No. 405.  Argued April 20, 1955.—Decided May 16, 1955.

*William L. Colden* argued the cause for petitioners. With him on the brief were *James A. Cobb, George E. C. Hayes* and *Charles W. Jones.*

*Edmund E. Shepherd,* Solicitor General, argued the cause for the State of Michigan, respondent.  With him on the brief were *Thomas M. Kavanagh,* Attorney General, and *Daniel J. O'Hara,* Assistant Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

Michigan law authorizes any judge of its courts of record to act as a so-called "one-man grand jury."[1]  He can compel witnesses to appear before him in secret to testify about suspected crimes.  We have previously held that such a Michigan "judge-grand jury" cannot consistently with the Due Process Clause of the Fourteenth Amendment summarily convict a witness of contempt for

---

[1] Mich. Stat. Ann., 1954, §§ 28.943, 28.944.

conduct in the secret hearings.  *In re Oliver,* 333 U. S. 257.  We held that before such a conviction could stand, due process requires as a minimum that an accused be given a public trial after reasonable notice of the charges, have a right to examine witnesses against him, call witnesses on his own behalf, and be represented by counsel. The question now before us is whether a contempt proceeding conducted in accordance with these standards complies with the due process requirement of an impartial tribunal where the same judge presiding at the contempt hearing had also served as the "one-man grand jury" out of which the contempt charges arose.  This does not involve, of course, the long-exercised power of courts summarily to punish certain conduct occurring in open court.[2]

The petitioners, Murchison and White, were called as witnesses before a "one-man judge-grand jury."  Murchison, a Detroit policeman, was interrogated at length in the judge's secret hearings where questions were asked him about suspected gambling in Detroit and bribery of policemen.  His answers left the judge persuaded that he had committed perjury, particularly in view of other evidence before the "judge-grand jury."  The judge then charged Murchison with perjury and ordered him to appear and show cause why he should not be punished for criminal contempt.[3]  White, the other petitioner, was

---

[2] *Sacher* v. *United States,* 343 U. S. 1; *Cooke* v. *United States,* 267 U. S. 517, 539; *Ex parte Savin,* 131 U. S. 267.  See also *In re Oliver,* 333 U. S. 257, 273–278.

[3] The contempt charge signed by the judge reads in part as follows: "It therefore appearing . . . that the said Patrolman Lee Roy Murchinson [sic] has been guilty of wilfull and corrupt perjury, which perjury has an obstructive effect upon the judicial inquiry being conducted by this court and the said Patrolman Lee Roy Murchinson [sic] obstructed the judicial function of the court by wilfully giving false answers as aforesaid, and did also tend to impair the respect for the authority of the court, all of which perjury and

also summoned to appear as a witness in the same "one-man grand jury" hearing. Asked numerous questions about gambling and bribery, he refused to answer on the ground that he was entitled under Michigan law to have counsel present with him. The "judge-grand jury" charged White with contempt and ordered him to appear and show cause. The judge who had been the "grand jury" then tried both petitioners in open court, convicted and sentenced them for contempt. Petitioners objected to being tried for contempt by this particular judge for a number of reasons including: (1) Michigan law expressly provides that a judge conducting a "one-man grand jury" inquiry will be disqualified from hearing or trying any case arising from his inquiry or from hearing any motion to dismiss or quash any complaint or indictment growing out of it, or from hearing any charge of contempt "except alleged contempt for neglect or refusal to appear in response to a summons or subpoena"; (2) trial before the judge who was at the same time the complainant, indicter and prosecutor, constituted a denial of the fair and impartial trial required by the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The trial judge answered the first challenge by holding that the state statute barring him from trying the contempt cases violated the Michigan Constitution on the ground that it would deprive a judge of inherent power to punish contempt. This interpretation of the Michigan Constitution is binding here. As to the second challenge

---

false answers given by the said witness aforesaid was committed during the sitting of, in the presence and view of this court and constitutes criminal contempt;

"It is therefore ordered that the said Patrolman Lee Roy Murchinson [sic] appear before this court on the tenth day of May, 1954, at 10:00 o'clock in the forenoon and show cause why he should not be punished for criminal contempt of this court because of his aforesaid acts."

the trial judge held that due process did not forbid him to try the contempt charges. He also rejected other constitutional contentions made by petitioners. The State Supreme Court sustained all the trial judge's holdings and affirmed.[4] Importance of the federal constitutional questions raised caused us to grant certiorari.[5] The view we take makes it unnecessary for us to consider or decide any of those questions except the due process challenge to trial by the judge who had conducted the secret "one-man grand jury" proceedings.[6]

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey* v. *Ohio*, 273 U. S. 510, 532. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt* v. *United States*, 348 U. S. 11, 14.

---

[4] *In re White*, 340 Mich. 140, 65 N. W. 2d 296; *In re Murchison*, 340 Mich. 151, 65 N. W. 2d 301.

[5] 348 U. S. 894.

[6] That we lay aside certain other federal constitutional challenges by petitioners is not to be taken as any intimation that we have passed on them one way or another.

It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. Perhaps no State has ever forced a defendant to accept grand jurors as proper trial jurors to pass on charges growing out of their hearings.[7] A single "judge-grand jury" is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal.[8] Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer.[9] It is true that contempt committed in a trial courtroom can under some circumstances be punished summarily by the trial judge. See *Cooke* v. *United States,* 267 U. S. 517, 539. But adjudication by a trial judge of a contempt committed in his immediate presence in open court cannot be likened to the proceedings here. For we held in the *Oliver* case that a person charged with contempt before a "one-man grand jury" could not be summarily tried.

---

[7] See, *e. g.,* Note, 50 L. R. A. (N. S.) 933, 953–954, 970–971.

[8] Apparently the trial judge here did consider himself a part of the prosecution. In passing on a request by Murchison's counsel for a two-day postponement of the contempt trial the judge said, "There are two points that suggest themselves to me.

"One is that if the respondent is going to claim that he was in Shrewsberry, Ontario, Canada, on March 9, 1954, that *we* ought to be furnished with information so that *we* could between now and two days from now, which I am going to give you, *we* could do some checking and investigating *ourselves.*" (Emphasis supplied.)

Because of the judge's dual position the view he took of his function is not at all surprising.

[9] See, *e. g., Queen* v. *London County Council,* [1892] 1 Q. B. 190; *Wisconsin ex rel. Getchel* v. *Bradish,* 95 Wis. 205, 70 N. W. 172.

As a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his "grand-jury" secret session. His recollection of that is likely to weigh far more heavily with him than any testimony given in the open hearings. That it sometimes does is illustrated by an incident which occurred in White's case. In finding White guilty of contempt the trial judge said, "there is one thing the record does not show, and that was Mr. White's attitude, and I must say that his attitude was almost insolent in the manner in which he answered questions and his attitude upon the witness stand. . . . Not only was the personal attitude insolent, but it was defiant, and I want to put that on the record." In answer to defense counsel's motion to strike these statements because they were not part of the original record the judge said, "That is something . . . that wouldn't appear on the record, but it would be very evident to the court." Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination.

This incident also shows that the judge was doubtless more familiar with the facts and circumstances in which the charges were rooted than was any other witness. There were no public witnesses upon whom petitioners could call to give disinterested testimony concerning what took place in the secret chambers of the judge. If there had been they might have been able to refute the judge's statement about White's insolence. Moreover, as shown by the judge's statement here, a "judge-grand jury" might himself many times be a very material witness in a later trial for contempt. If the charge should be heard before

that judge, the result would be either that the defendant must be deprived of examining or cross-examining him or else there would be the spectacle of the trial judge presenting testimony upon which he must finally pass in determining the guilt or innocence of the defendant.[10]    In either event the State would have the benefit of the judge's personal knowledge while the accused would be denied an effective opportunity to cross-examine.   The right of a defendant to examine and cross-examine witnesses is too essential to a fair trial to have that right jeopardized in such way.

We hold that it was a violation of due process for the "judge-grand jury" to try these petitioners, and it was therefore error for the Supreme Court of Michigan to uphold the convictions.   The judgments are reversed and the causes are remanded for proceedings not inconsistent with this opinion.

*Reversed.*

Mr. Justice Reed and Mr. Justice Minton, dissenting, with whom Mr. Justice Burton joins.

The Court holds that it is unconstitutional for a state judge to punish a contempt, previously committed before him while acting as a so-called one-man grand jury, after a full hearing in open court.   It holds that White, in being so punished for his blanket refusal to answer any questions before the grand jury, and Murchison, in being so punished for perjury before the same body, were deprived of their liberty without due process of law.

This conclusion is not rested on any irregularity in the proceedings before either the grand jury or the court. Under Michigan procedure a single state judge makes the

---

[10] See *Hale* v. *Wyatt,* 78 N. H. 214, 98 A. 379.   See also, Witnesses— Competency—Competency of a Presiding Judge as Witness, 28 Harv. L. Rev. 115.

grand jury investigation, not in secret, but with other public officials to aid him, and a transcript is made of the testimony. There is certainly nothing unconstitutional about this. A State may reduce the customary number of grand jurors to one, and impart the investigatory duty to a member of its judiciary if it so desires. Further, the accused is afforded a full hearing in open court, with a statement of charges, benefit of counsel, and a full opportunity to explain his conduct before the grand jury, before being held in contempt. Thus all the requirements set down in *In re Oliver*, 333 U. S. 257, are met.

The Court's determination is rested on the sole fact that the same judge first cited petitioners for contempt committed in his presence, and then presided over the proceedings leading to the final adjudication. It is neither shown nor alleged that the state judge was in any way biased. Nor is this required by the Court, for it holds, as a matter of law, that the judge's "interest" in a conviction makes the proceedings inherently prejudicial and thus constitutionally invalid. The fact that the "interest" of the state judge in this procedure is no different from that of other judges who have traditionally punished for contempt leads us to dissent.

In *Sacher* v. *United States*, 343 U. S. 1, we upheld the power of a federal district judge to summarily punish a contempt previously committed in his presence. In that case, after a trial which had extended for some nine months, the trial judge issued a certificate summarily holding defense counsel in contempt for their actions during the trial. There were no formalities, no hearings, no taking of evidence, no arguments and no briefs. We held that such a procedure was permitted by Rule 42 of the Federal Rules of Criminal Procedure which codified the "prevailing usages at law." The Court specifically rejected the contention that the judge who heard the contempt was disqualified from punishing it and should be required

to assume the role of accuser or complaining witness before another judge. In *Offutt* v. *United States,* 348 U. S. 11, the Court simply stated an exception: when the trial judge becomes personally embroiled with the contemnor, he must step aside in favor of another judge. That decision was rested upon our supervisory authority over the administration of criminal justice in the federal courts. The Court now holds, even though there is no showing or contention that the state judge became embroiled or personally exercised, or was in any way biased, that as a matter of constitutional law—of procedural due process—a state judge may not punish a contempt previously committed in his presence. This seems inconsistent with all that has gone before.

The Court, presumably referring to the situation in the federal courts, states that the "adjudication by a trial judge of a contempt committed in his immediate presence in open court cannot be likened to the proceedings here." The reason that it cannot, we are told, is because "we held in the *Oliver* case that a person charged with contempt before a 'one-man grand jury' could not be summarily tried." This is hardly explanatory, for the question of whether the hearing is to be summary or plenary has no bearing on the attitude or "interest" of the judges in the two situations, which is indistinguishable. The simple fact is that in the federal courts we allow the same judge who hears the contempt and issues the certificate to punish it subsequently and summarily, but in this case we do not allow such punishment even after a full court trial. The only factual difference between *Sacher* and this case is that the contempt in *Sacher* was committed at a public trial. When the contempt is not committed in open court, we require that the criminal conviction be in public and that the individual be given a full hearing, with an opportunity to defend himself against the charges proffered and to make a record from which to appeal. *In re*

*Oliver,* 333 U. S. 257. Petitioners had all this. They are not entitled to more.

We do not see how it can be held that it violates fundamental concepts of fair play and justice for a state judge after a full court trial to punish a contempt previously observed when acting as a grand jury, when it has been held that it is perfectly proper for a federal judge to summarily punish a contempt previously observed in open court. It seems to us that the Court has imposed a more stringent requirement on state judges as a matter of due process than we have imposed on federal judges over whom we exercise supervisory power.

The Court relies heavily on *Tumey* v. *Ohio,* 273 U. S. 510. There we held that it deprives a defendant of due process to "subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." *Id.,* at 523. It is one thing to hold that a judge has too great an interest in a case to permit the rendition of a fair verdict when his compensation is determined by the result he reaches. It is quite another thing to disqualify a state judge as having too great an interest to render a due process judgment when his sole interest, as shown by this record, is the maintenance of order and decorum in the investigation of crime—an interest which he shares in common with all judges who punish for contempt.

The State of Michigan has decided that in the administration of its criminal law it is wise to have the investigating power in the hands of a judge. It has also decided that the judge who observes the contempt is to preside at the trial of the contemnor. It does not seem that there is here such a violation of accepted judicial standards as to justify this Court's determination of unconstitutionality.

We would affirm.