Frederick M. Marshall, J.
Defendants move to dismiss the indictments returned against them by a Grand Jury of this Extraordinary Special and Trial Term of Supreme Court, on the grounds that the statutes by virtue of which the term exists violate the Constitution of the United States and the statutory law of the United States. They argue that section 149 of the Judiciary Law and subdivision 2 of section. 63 of the Executive Law and, indeed, section 27 of article VI of the New York Constitution are, on their face, unconstitutional. Section 27 of article VI of the New York State Constitution and section 149 of the Judiciary Law grant to the Governor the authority to appoint an Extraordinary Term of the Supreme Court and to designate the time and place and Justice who shall hold the term.
Subdivision 2 of section 63 of the Executive Law outlines the general duties of the Attorney-General to appear before any term of the Supreme Court for the purpose of conducting any criminal actions or proceedings as ' shall be required by the Governor.
The defendants claim that these provisions of the New York State Constitution and statutes constitute an encroachment by the executive branch of the government upon the functions of the judicial branch. This encroachment, they argue, raises the possibility that defendants ’ right to a fair trial before an impartial *15 judiciary will be denied. They complain that the Governor, through the authority coneededly vested in him by the Legislature, has the power to impose his will upon the judicial branch of the government and thus, to deny individual defendants that impartiality required by due process.
The defendants do not accuse the Governor or the Presiding Justice of this Extraordinary Special and Trial Term of actual bias. Their argument is that the system as it exists, whereby the Governor appoints the Presiding Justice, is in itself a deprivation of due process. They argue that “it is not improbable that someday, sometime a governor may appoint a Judge to do the Governor’s will and that there are in theory, incentives to allow such a Judge to become servient to the Governor. ’ ’
Defendants cite, in support of their argument, the decisions of the United States Supreme Court of Matter of Murchison (349 U. S. 133) and Turney v. Ohio (273 U. S. 510).
Matter of Murchison (supra) involved a Michigan statute which authorized any Judge of its court to act as a “ one-man grand jury. ’ ’ Pursuant to that statute, a Judge held secret hearings at which several witnesses were interrogated. Later, the same Judge, after a hearing in open court, adjudged two of the witnesses guilty of contempt and sentenced them to punishment for events which took place before him in the Grand Jury proceedings. The Supreme Court held that the procedure followed by the Judge, whereby he charged, tried and convicted the witnesses of contempt, violated the due process clause of the Fourteenth Amendment. The court based its decision primarily on the fact that the Judge’s earlier exposure to the witnesses, in the role of investigator, would almost inevitably detract from his ability to remain impartial at the trial.
In Turney v. Ohio (supra) the Supreme Court was dealing with a situation wherein a Trial Judge was paid for his service only when he convicted a defendant. The court, quite logically held, that to subject a defendant to trial in a criminal case involving his liberty or property before a Judge having direct, personal and substantial pecuniary interest in convicting him is a denial of due process of law.
These decisions cannot be cited as authority for the motion presently under consideration. We are not faced with a situation where a Trial Judge is also acting as prosecutor. Nor is there even a remote possibility that a Trial Judge could gain, financially or otherwise, by a conviction of these defendants. The court and statutes of this State do not create a situation which offers “ a possible temptation to the average man as a *16 judge * * * not to hold the balance nice, clear and true between the State and the accused.” (Turney v. Ohio, supra, p. 532.)
If we were to accept the contention of the defendants that they are deprived of due process of law merely because there exists a possibility that someday, sometime a Governor may appoint a Judge to do his bidding in violation of law, then, we would logically have to conclude that the United States Constitution which empowers the President to appoint all members of the Federal Bench is similarly a violation of due process.
A basic premise in defendants’ argument is that the laws in question, authorizing the Governor to appoint this Extraordinary Special Term, violates the “ separation of powers doctrine ” of the Federal Constitution and are therefore a denial of due process.
Whether the legislative, executive and judicial powers of a State shall be kept together or separate is a determination to be made by the State. This separation of powers is not an element to be considered when making an inquiry as to whether or not the due process of law demanded by the Fourteenth Amendment has been respected by the State. (Dreyer v. Illinois, 187 U. S. 71, 84.)
The defendants misinterpret the separation of powers doctrine. The three branches of government cannot and do not operate within isolated, sealed and impregnable compartments. There is an interdependence, a process of unified and joint effort calculated and deliberately designed by the architects of our system of jurisprudence to give the Government balance and stability.
The constitutional question raised by the defendants has previously been considered and rejected by the highest court of the State. In People ex rel. Saranac Land & Timber Co. v. Extraordinary Special & Trial Term (220 N. Y. 487), the Court of Appeals, in an opinion written by Justice Cakdozo, held that the power of the Governor of this State to appoint an Extraordinary Trial Term was not in conflict with the Constitution.
I can find no basis in fact or in law which would sustain defendants’ arguments.
Defendants’ motion is denied in all respects.