The People of Puerto Rico, Petitioner ·and Appellant, *v.* Cayetano Barranco and Juan Bones González, Defendants and Appellees.

No. CE-63-31.        Decided June 24, 1965.

544

*J. B. Fernández Badillo*, Solicitor General, and *Héctor R. Orlandi Gómez*, Assistant Solicitor General, for petitioner. *Luis F. Camacho, Jr.*, for Cayetano Barranco. *Santiago C. Soler Favale* for Juan Bones González. *Justino Ferrer Muñoz, Gilberto Concepción de Gracia*, and *Félix Ochoteco, Hijo*, for the Bar Association, amicus curiae.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

◼ In the case of Cayetano Barranco, Judge Filiberto Santiago, of the District Court, Cayey Part, sentenced him to serve three months in jail for aggravated assault and battery after a trial on the merits. In the District Court defendant challenged the validity of the proceedings on the ground, *inter alia*, of violation of the due process of law guaranteed by the Fifth Amendment of the Constitution of the United States and § 7 of Article II of the Constitution of the Commonwealth of Puerto Rico; separation of powers set forth in § 2 of Article I of the Constitution of the Commonwealth, and the right to an impartial and fair trial to which every accused is entitled.

In the case of Juan Bones González, in the District Court, Guayama Part, at a hearing in Arroyo, Judge Filiberto Santiago, after a trial on the merits, sentenced him to pay $200 or, in default thereof, 90 days in jail for violation of the Traffic Law. When the first witness for the prosecution began to testify the defense objected to each and every one of the questions made by the presiding judge on the ground that he was acting as a prosecuting attorney, thus violating the due process of law. He requested that henceforth each and every one of the questions of the Magistrate be considered objected. In the case against Barranco, before pronouncement of sentence, the defense filed a memorandum in support of his objections.

An appeal was taken from both decisions to the Superior Court, Guayama Part. Barranco submitted his appeal on the same brief filed in the District Court. Bones submitted his appeal on a sole assignment of error to the effect that the District Court erred when the presiding judge acted as judge and prosecutor. Both cases were decided by the Superior Court, Guayama Part, in a single opinion and judgment. The court reversed the judgments appealed from and ordered that new trials be held "in a manner compatible with the terms of this opinion, that is, with the assistance of a prosecuting attorney and before a judge not acting as a prosecuting attorney." On petition by the People we issued a writ of certiorari to confront the question raised.

In its opinion the trial court stated:

"In both cases, after defendants pleaded not guilty and the witnesses for the prosecution and the witnesses for the defense were sworn the judge called for the oral evidence of the prosecution, he conducted the direct examination thereof, and counsel for the defense conducted cross-examination. The oral evidence for the defense having been introduced, the judge cross-examined the witnesses after which defendants moved for their acquittal because throughout the entire proceeding the judge had acted as judge and prosecuting attorney, thereby violating their right to an impartial trial as guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Puerto Rico . . . .

"In their briefs appellants raise the question that the trial court committed a reversible error in depriving them of a fair and impartial trial since the trial judge presiding the hearing acted in the dual capacity of trier and prosecutor at the same time.

"Defendants-appellants are right.

"It is a true fact that at the hearing of the cases at bar the trial judge acted as judge and prosecuting attorney in the same manner as any judge of the District Court of Puerto Rico presiding that hearing would have acted. And it is true that in trials of all penal cases which are held in the different parts of said court the judges act as judges and prosecutors at the same

time, whenever a defendant pleads not guilty, except when, in rare occasions, upon complainant's petition a special private prosecuting attorney is called to act and his fees are paid by the latter.

"Such is the situation and has been for many years, not by the whim or will of the judges in question, but by operation of a lofty system which entered the hierarchy of law approved March 12, 1903, as subsequently amended and which appears in 34 L.P.R.A. §§ 58 and 59.

"Of course, the fact that the district judges are authorized by law to act as judges and prosecutors simultaneously as aforestated, does not mean that said action does not fundamentally impair defendant's right to a fair and impartial trial, nor does it mean either, that the judges are impartial because in so acting they obey an order of the law . . . .

"If in said criminal prosecution the services of the prosecuting attorney are dispensed with and the judge is authorized to assume his function, the trier ceases to be a mere judge to become a judge-prosecutor. As such he represents the State, and as he himself is an interested party against defendant, the judge acting as prosecuting attorney is the interested party against defendant. This combination of incompatible functions defeats the impartiality of the judge fundamentally undermining the foundations of the fair trial to which every defendant is entitled. As the judge, in his role of prosecuting attorney, is actively interested in showing with the evidence which he himself introduces and with the evidence for the defense, which he controverts and rebuts, that defendant is guilty beyond a reasonable doubt, he cannot, in his role as trier, prevent his mind, human after all, from being subject to the laws of psychological science and to lose, partly or entirely, the notion of impartiality that should characterize his delicate mission during the trial. How can the trier act impartially and fairly unfolding himself to weigh, as prosecuting attorney, the evidence for the prosecution and the evidence for the defense, and unfolding, in his turn, on the other hand, to hear the same evidence as judge? If the verdict is guilty it is blemished by the inquisitorial proceeding on which his verdict is grounded and which lacks the validity of the verdict which is the culmination of a fair and impartial trial. The judicial drama staged

is a sad tragedy in which the trier's impartiality has been broken into a thousand pieces by the trier himself under the underlying system of the law. The human dignity of the accused has been flouted. And the cause of democracy has suffered an upheaval as a result of this juridical monstrosity.

"Such is the anomaly of our juridical system which emanates from said Act of 1903 and provides that the judges of the District Court of Puerto Rico shall act as judge-prosecutors in the criminal cases within their province when the defendant pleads not guilty. Such is the tragedy of the judicial drama involved in each one of such cases in which the impartiality of the trier is put to flight and defendant's fundamental right to a just and fair trial is spurned. And since it is impossible to have a fair and impartial trial before a judge who is not impartial and unbiased under the juridical system in question the foundations of democracy are shaken.

"The great North American jurist, Jerome Frank in his book, Courts on Trial, said: 'Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness.'

"It is true that the aforestated inquisitorial system granted defendant, by the same Act of its creation in 1903, as a compensatory remedy, the right to appeal and be tried in a Superior Court in a trial de novo. At this trial defendant-appellant was guaranteed a fair and impartial trial held before an impartial and disinterested judge without the latter having to act as prosecuting attorney, since an official, the prosecuting attorney, represented the People of Puerto Rico. And although in order to obtain the right to a trial de novo before said impartial and disinterested judge defendant must have been convicted and sentenced by the judge-prosecutor in question, to serve a term in jail or to pay a fine, at least, the right to a trial de novo served to cure the constitutional defect of the trial held before the judge-prosecutor. But with the enactment of the Judiciary Act on July 24, 1952, the right to a trial de novo disappeared and in lieu thereof appeal to a Superior Court was granted which does not authorize the holding of any other trial, said appeal being limited to the review of the proceedings had in the District Court. That is, said Judiciary Act established the system of the criminal trial before a judge-prosecutor of the District Court which deprives defendant of a trial de novo.

"What sort of fair and just trial could appellants expect in a District Court presided by a judge-prosecutor, who in the discharge of his duty as such was determined to prove, not just passively, but affirmatively, that defendants were guilty of the crime charged against each one of them? With the system of judge-prosecutor, a link which juridically connects Puerto Rico to the Middle Ages, defendants could not have, and did not have, the impartial trial warranted by the Constitution of the Commonwealth of Puerto Rico . . . . [Reference is made to Rule 159 (b) of the Rules of Criminal Procedure of 1963.]

"We ask: Will the next generation endure such a retrogressive and archaic system which permits a judge-prosecutor to deprive defendant of the fair trial to which he is entitled?

"The present system of criminal trial in the District Court is unconstitutional insofar as said system permits a judge to act as judge and prosecuting attorney at the same time in a prosecution where defendant pleads not guilty and the trial is held without the assistance of a public or private prosecuting attorney on behalf of the People of Puerto Rico.

"The judgments appealed from will be reversed and a new trial ordered for each defendant-appellant, which new trial will be held in harmony with the terms of this opinion, that is, with the assistance of a prosecuting attorney and before a judge not acting as prosecuting attorney." Here ends the judgment of the trial court.

The judge described as judge-prosecutor and the proceeding described as not fair and impartial are the judge and the proceeding referred to in §§ 28 and 29 of the Code of Criminal Procedure of 1902.

Section 28 provides that when a defendant is put upon trial, should he refuse to answer or to plead to the complaint the justice of the peace shall enter a plea of "not guilty" and shall proceed to examine witnesses "to determine from the evidence whether defendant be guilty or not guilty."

Section 29 provides that if defendant pleads not guilty the justice of the peace shall proceed as follows: he shall examine under oath the witnesses for the prosecution and the witnesses for the defendant, including the defendant himself

if he wishes to testify, and if he does not testify that fact cannot be used against him. The witnesses for the prosecution may be called to rebut any testimony, and for no other purpose. The judge shall render his judgment taking into consideration the evidence adduced, and the trial must be had and the judgment rendered in the presence of the defendant, except in cases of offenses not implying mental perversity or moral depravity or when he is represented by counsel.[1]

The judgments of conviction and the absence of a fair trial as a result of the conduct of the judge or of specific facts particularly in these cases have not been attacked. It is the entire system of procedure that has been attacked and condemned as one that is on the margin of due process of law incapable of producing a fair and impartial verdict.

Since it is the system that is being questioned and condemned, the reason for its condemnation must stem from the system itself. It is inescapably necessary to have knowledge of its fruits in order to be able, with full consciousness and sense of responsibility, to condemn or acquit it of such imputation. We must, therefore, resort to the only evidence capable of evaluating it against the attack, which is its own expression, although we regret to indulge in an arid exposition of figures.

Let the system speak for itself, and let the conscience of the district judge speak for itself too:

1—In the year 1963–64, of 223,874 criminal cases disposed of (not transferred) there was plea of guilty in 134,709

---

[1] 34 L.P.R.A. §§ 58, 59. See Rule 159(b) of the Rules of Criminal Procedure of 1963. The Act of March 10, 1904 which reorganized the judiciary system created the position of municipal judge (District) having the duties and functions of the justice of the peace; and the Act of May 28, 1904 provided that the procedure to be followed in criminal trials before the municipal courts shall be the same as those provided for criminal cases in the justices of the peace courts. See *People* v. *Rivas*, 16 P.R.R. 581.

cases, leaving 89,165 in litigation for the decision of the judge. Of the 89,165 cases in litigation 48,070 were dismissed and 41,095 remained for the decision on the merits. Of these 41,095 the judge rendered judgment of conviction in *11,219* cases and acquitted *29,876*. Of the 89,165 cases where there was no plea of guilty but action by the judge, the People did not prevail, dismissals and acquittals, in 77,946 cases.

In view of the fact that the traffic cases present quite different characteristics and peculiarities and that the evidence depends to a greater extent on the testimony of the Police, we consider the situation as to traffic separately:

2—In the year 1963–64, of 142,674 traffic cases disposed of (not transferred) there was plea of guilty in 98,869 cases, leaving 43,805 in litigation for the action of the judge. Of these 43,805 cases 30,758 were dismissed, 13,047 remaining for the decision on the merits. Of these 13,047 the judge rendered judgment of conviction in *3,103* and judgment of acquittal in *9,944*.

3—Following identical order of analysis the preceding years up to 1953–54 invariably show an identical pattern of behavior and attitude of the district judge:

|  | In litigation: | Dismissed: | Convicted: | Acquitted: |
|---|---|---|---|---|
| 1962–63 | 66,529 | 32,658 | 9,041 | 24,830 |
| Transit | 35,575 | 22,504 | 2,763 | 10,308 |
| 1961–62 | 71,986 | 32,233 | 10,660 | 29,093 |
| Transit | 33,476 | 20,422 | 2,433 | 10,621 |
| 1960–61 | 70,580 | 30,068 | 10,427 | 30,085 |
| Transit | 31,250 | 18,238 | 2,400 | 10,612 |
| 1959–60 | 54,452 | 17,143 | 10,216 | 27,093 |
| Transit | 15,704 | 6,075 | 1,820 | 7,809 |
| 1958–59 | 56,314 | 16,740 | 10,655 | 28,919 |
| Transit | 16,498 | 6,089 | 1,659 | 8,750 |

|  | In litigation: | Dismissed: | Convicted: | Acquitted: |
|---|---|---|---|---|
| 1957–58 | 53,528 | 17,165 | 10,391 | 25,972 |
| Transit | 15,860 | 5,787 | 2,038 | 8,035 |
| 1956–57 | 60,535 | 25,471 | 11,421 | 23,643 |
| Transit | 20,559 | 11,209 | 2,145 | 7,196 |
| 1955–56 | 52,491 | 13,992 | 12,522 | 25,977 |
| Transit | 14,491 | 4,839 | 2,238 | 7,414 |
| 1954–55 | 49,942 | 7,956 | 14,534 | 27,452 |
| 1953–54 | 52,134 | 9,198 | 16,449 | 26,487 |
| Total: | 588,491 | 202,624 | 116,316 | 269,551 |

Of the 116,316 convictions by the judge, 7,931 were taken on appeal to the Superior Court. Of those 7,931, 3,702 were dismissed and abandoned. Of the 4,229 considered on the merits, *2,989* were affirmed and *1,240* were reversed or remanded.

4—A comparison with the Superior Court where the People is represented by a prosecuting attorney:

|  | Convictions: | | Acquittals: | |
|---|---|---|---|---|
|  | Jury: | Judge: | Jury: | Judge: |
| 1963–64 | 632 | 3,047 | 555 | 3,308 |
| 1962–63 | 450 | 2,089 | 418 | 2,588 |
| 1961–62 | 414 | 2,467 | 488 | 2,328 |
| 1960–61 | 325 | 1,811 | 385 | 1,719 |
| 1959–60 | 224 | 2,180 | 341 | 1,420 |
| 1958–59 | 279 | 1,544 | 287 | 1,095 |
| 1957–58 | 224 | 1,271 | 233 | 977 |
| 1956–57 | 263 | 1,423 | 296 | 971 |
| 1955–56 | 245 | 1,579 | 249 | 1,038 |
| 1954–55 | 287 | 1,498 | 239 | 1,048 |

|  | Convictions: | | Acquittals: | |
| --- | --- | --- | --- | --- |
|  | *Jury:* | *Judge:* | *Jury:* | *Judge:* |
| 1953–54 | 298 | 1,344 | 259 | 999 |
|  | 3,641 | 20,253 | 3,750 | 17,491 |
| TOTAL: | 23,894 | | 21,241 | |

■ Those figures restore the peace of mind, which must have naturally felt the impact of the judgment of the lower court in which the justice of the district judge is stigmatized with harsh tones. The 269,551 acquittals in 385,867 cases tried on the merits against 116,316 convictions belie the existence of a district judge whose impartiality "has been broken into a thousand pieces by the trier himself" for the reason that he examines the witnesses for the prosecution and for the defense under § 29. They belie the existence of a district judge who has flouted "the human dignity of the accused" because he had the duty to examine the witnesses at the trial. They belie the fact that those 385,867 prosecutions have been a "sad tragedy" and a tragic juridical drama in which defendants were deprived of an impartial and fair trial. They belie the fact that by reason of the examination ordered by § 29, the district judge is a "judge-prosecutor" who is "determined to prove" . . . "affirmatively" that defendants before him are guilty.

■ They disprove the fact that by reason of the examination permitted by law, the district judge becomes, at the trial presided by him, a prosecuting attorney for the sole object and purpose contemplated by a prosecuting attorney, that of *"showing* with the evidence which he himself introduces and with the evidence for the defense, which he controverts, that defendant is guilty beyond a reasonable doubt" and they disprove that the impartiality of the trier has been put "to flight".

If we consider the mission of the public prosecutor whose principal function and responsibility is to investigate and persecute the commission of the offense and bring the offender before the judicial power for his prosecution and there prove his guilt,[2] those figures show that the district judge maintained his impartiality as a trier.

The questioning function of the prosecuting attorney during a trial, which may be performed by any other attorney in representation of The People—§ 232, subd. 3, Code of Criminal Procedure, 34 L.P.R.A. § 712(3)—the only one keeping any relation with the duties of the judge under § 29, is not his exclusive action, nor that which defines him as the public officer in charge of investigating and persecuting the offense. To add the name of prosecutor to that of the judge and then attribute to him, by reason of § 29, the purposes thereof, acting also as a trier, is, at the very least, a lack of reflection evidenced by those comparative figures of acquittals after a trial on the merits, and by those figures of dismissals in which to a great extent judgment is passed and judicial discretion is exercised.

Judged by its own fruits as revealed by those figures, the district judiciary has proved by itself the nonexistence of a judge who is unable, under the juridical rule or under "the laws of psychological science," to try and render judgment on the evidence as weighed by him and as dictated by his conscience, and to give defendant the benefit of the doubt in his unique position as disinterested trier, notwithstanding the provision of § 29.

If anything has been proved—over 4/5 of all the cases dismissed or acquitted where there was no plea of guilty—is the disadvantageous position of The People at the level of the district judge for lack of a prosecuting attorney. If anything has been proved in relation to the proportion of

---

[2] Sections 67–70; 95–109 as amended, of the Code of Criminal Procedure 1935 ed.; 34 L.P.R.A. §§ 122–125; 171–183, amended.

acquittals on the merits of a trial to the convictions—269,551 to 116,316—within a period in which the trial de novo had already been abolished, and compare the proportion in the Superior Court where they have the prosecuting attorney representing The People—2,762 more convictions by the judge than acquittals—if anything is proved, we repeat, it is that the judge was not sufficiently inquisitive in his questioning function due to his scruples of not assuming as a trial judge the role of the prosecuting attorney, an office lacking in the district judiciary.

This is the picture of acquittals even years before our decision in *People* v. *Toro*, decided on February 9, 1962, 84 P.R.R. 473, when generally, the judge, passing on judgment, had investigated the cause and ordered the proceeding, and had heard beforehand the testimony of the witnesses. After the decision in *Toro*, where the judge hears the witnesses when they take the witness stand at the hearing, in the presence of defendant legally represented, there would still be less ground to stigmatize the justice of the district court as a juridical monstrosity which links us to the Middle Ages.[3]

---

[3] In the prosecution system of continental Europe nowadays it is normally the judge who does all the questioning. The Anglo-Saxon system, although different, absolutely does not deny said right. Puttkammer, Administration of Criminal Law 199 *et seq.* (1953).

We have prepared the data from the tables attached to the Annual Reports of the Administrative Director of the Office of Court Administration published from the years 1953–54 to 1963–64.

During the period from July 1, 1964 to March, 1965 the pattern remains unaltered. Of the 177,461 cases disposed of (not removed), there were 126,593 pleas of guilty, leaving 52,868 in litigation for decision by the judge. Of those, 26,613 were dismissed and 26,255 remained for decision on the merits in trial. Of these 26,255, the judge convicted 7,247 and acquitted 19,008.

On traffic: Of 25,800 which remained in litigation, 16,417 were dismissed and 9,386 remained to be decided on the merits in trial. Of these 9,386, 2,023 were convicted and 7,360 were acquitted. Data compiled by the Administration.

It must not be understood that we even insinuate that had the result been to the contrary, equal or greater proportion of convictions, we would have declared the impeachment to be valid. Trials which produce convictions are not on that account less just and fair, just as those which produce acquittals may not be on that account more just. But the Law does not function abstractedly from the laws of cause and effect of the philosophy, and, as every science, it demands that the deductive process be rational and logical.

In a system of administering justice which is condemned because it produces the figure of a judge impaired as an impartial judge, who, in performing the legal functions at the trial only pursues the conviction of defendant, there should be, in good logic, rare cases of acquittals. In this sense alone, and in no other, we have presented the comparative figures, without it being insinuated that in this or any other judiciary such as that of the Superior Court, a greater proportion or excess of convictions implies, as a rule, the absence of the impartial trial.

The error of approach committed by the trial court and likewise by others who have voiced their opinion, arises from the concept, wrongly and thoughtlessly coined, of the "judge-prosecutor" referring to the district judge. Once the entelechy is created the speculation evolved around it seems to be logical, but it is not. The concept is false, the speculation is false.

The coined phrase "judge-prosecutor" arises in turn from a false concept attributed to § 29. This section does not destroy the trier to place in his stead the prosecuting attorney with all the objectives of the prosecutor who pursues conviction. The questioning function imposed on him is not by itself incompatible with that of acting as a judge if in performing said function he is not improperly attributed purposes and objectives which do not arise from the statute or not intended by the lawmaker. The right of a judge to question, with or without express provision of law, is inher-

ent in his very function of administering justice and is consecrated in all the systems of jurisprudence not only as a prerogative, but as a duty in his mission of discovering and clarifying the truth. This Court has so held as a matter of principle. It has been more exacting and has imposed individual corrective action in cases generally before a jury in the delicate situation where the effect of a judge's intervention beyond the proper limits may convey to the jury his opinion on the facts or on the credibility of the witnesses. Likewise, there should be individual correction to the district judge who deviates from the law.[4] This is not the institutional problem under consideration.

Still more important, the error of approach arises from the misunderstood concept which places the impartiality of the proceeding on merely external forms, when it should be sought where it actually lies, in the simple and honest conscience of the trier. The external forms deny impartiality to the proceeding when they prevent that the whole truth be brought before the judge, because, even under improper procedural guides, a good judge does justice.

*Toro, supra,* and *Murchison* are insistently invoked. *In re Murchison,* 349 U.S. 133. There is no similarity. *Murchison* upholds the principle, in the presence of extreme facts, that no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. A judge in the course of a secret investigation acting as a judge-grand jury reaches the conclusion that two

---

[4] *People* v. *Bartolomei,* 70 P.R.R. 664 (1949); *People* v. *Aletriz,* 85 P.R.R. 621 (1962); *People* v. *Matos,* 81 P.R.R. 496 (1959); *People* v. *Túa,* 84 P.R.R. 37 (1961); *People* v. *Rivera,* 71 P.R.R. 115 (1950); *People* v. *Rodríguez,* 65 P.R.R. 497 (1946); *People* v. *González,* 61 P.R.R. 336 (1943); *People* v. *Pierantoni,* 60 P.R.R. 13 (1942); *People* v. *Alvarado,* 55 P.R.R. 24 (1939); *People* v. *Montañez,* 54 P.R.R. 810 (1939); *People* v. *Saltari,* 53 P.R.R. 850 (1938); *People* v. *Quiles,* 41 P.R.R. 904 (1931); *People* v. *Tirado,* 38 P.R.R. 795 (1928); *People* v. *Acevedo,* 35 P.R.R. 886 (1926). See the situation in *McIntosh* v. *People of Virgin Islands,* 83 F.2d 380. The exposition in *State* v. *Keehn,* 118 Pac. 851 (Kan.).

persons have committed contempt and perjury before him and files a complaint for contempt against them. Then he tries them. In order to convict them he had to complete the record with facts relating to the occurrence in the private chambers. Against said evidence the convicts did not have the opportunity to exercise their right of cross-examination.

The situation in *Toro* was not as sharp as in *Murchison.* However, we wanted to eliminate the ever present danger of having a district judge who has previously investigated a case to decide it under the influence of the opinion formed when he investigated and ordered it, and not solely on the evidence introduced at the trial with the opportunity of being cross-examined. Even so, according to the aforementioned figures it seems that in the era preceding *Toro* the district judge rendered judgment as a rule on the evidence in the proceeding.

None of these cases stigmatizes the whole district judiciary institutionally as one incapable of rendering a just and impartial verdict.

The judgments appealed from will be reversed and the cases will be remanded to the trial court with instructions to render other judgments affirming those entered by the District Court, Cayey and Guayama Parts.