Julian Scott, Appellant, v Joseph J. Christian, as Chairman of the New York City Housing Authority, Respondent.

Second Department, December 12, 1977

APPEARANCES OF COUNSEL

*John C. Gray, Jr. (Barbara A. Ziony* of counsel), for appellant.

*Donald Schatz (Joyce Lazoff* of counsel), for respondent.

## OPINION OF THE COURT

HAWKINS, J.

The petitioner, a tenant in a public housing project, appeals from that portion of a judgment which dismissed his CPLR article 78 proceeding, whereby he sought review of a determination of the respondent, Chairman of the New York City Housing Authority (Housing Authority), which increased his rent and assessed a charge for arrears in rent. Petitioner has occupied an apartment in a public housing project, the Raymond B. Ingersoll Houses, maintained and operated by the Housing Authority. The increase in rent is based upon the discovery by the Housing Authority that the tenant's daugh-

ter and son-in-law had been occupying the demised premises while the latter had been gainfully employed, earning some $11,000 per annum. The tenant had been on welfare during this time. The lease and the Housing Authority's rules and regulations require the tenant to submit annual income statements of the family's income. The Housing Authority first became aware of the increased occupancy and the family's income when the daughter and son-in-law applied for an apartment in a public housing project. Upon increasing the rent, petitioner was advised that the rent would be further adjusted upon his submitting evidence that the additional occupants had been residing elsewhere.

■ Special Term, in our opinion, correctly held petitioner's reliance upon *Escalera v New York City Housing Auth.* (425 F2d 853) to be misplaced. *Escalera* merely mandates, in instances not requiring a "full-fledged adversary hearing", that a tenant be given an opportunity to rebut the evidence. A hearing so limited as to accord an opportunity to rebut, however, need not be provided where the increased rent demanded results from a tenant concealing his financial resources, or from increased occupancy. There is a marked distinction between a rent increase imposed so as to recoup damages to the freehold resulting from a tenant's abuse of the apartment in violation of the terms of his lease and the Housing Authority's rules and regulations, as against an increase based upon a fraud practiced upon that landlord by the tenant concealing available income. The rents fixed by the Housing Authority are, of course, geared to the tenant's financial resources. The obligation to so adjust rents is imposed upon the Housing Authority by statute.

Any doubts as to the holding in *Escalera* are resolved by reference to a subsequent decision of the United States Court of Appeals for the Second Circuit, *Burr v New Rochelle Municipal Housing Auth.* (479 F2d 1165). There the tenants objected to an "across-the-board service charge or rent increase". In modifying the order of the District Court, which had directed a formal adversary hearing, the Court of Appeals held that it sufficed if the tenants were merely given an opportunity for oral presentation of their objections. Interestingly, that court expounded at some length upon the possible consequences of expanding a simple rent dispute into a cause celebre with the full panoply of administrative adversary hearings and ineluctable subsequent judicial review. Granted

that in *Burr* all the tenants of the project were necessarily involved; nevertheless, that court noted (p 1168) that "[t]he New York City Housing Authority, for example, operates 188 housing projects, housing approximately 600,000 persons in 155,610 apartments. A full adversary hearing in such a situation with all attendant procedures would present the most serious difficulties."

■ To reverse the judgment would open the floodgates to article 78 proceedings and subsequent appeals, predictably in hundreds of instances in which the Housing Authority has ordered individual increases because of a tenant's failure to inform the Housing Authority of a significant change in economic circumstances. All that is necessary, under *Burr,* is that the notice of the proposed rent increase be served "well in advance of the date for the increase. Opportunity for filing written objections shall be given. There need be no opportunity for oral presentation * * *. The tenants or their representatives shall have the right to submit any material they consider relevant to disprove the need for the rent increase" (479 F2d, at p 1170). Surely a ruling juridically sufficient for scores of tenants should suffice for an individual tenant.

The tenant herein has indeed been accorded an opportunity to rebut the charges made by the Housing Authority irrespective of whether a formal or informal hearing was had. On behalf of the tenant, there were proffered rent receipts purportedly establishing that the tenant's daughter and son-in-law had been residing elsewhere. It developed, however, that the receipts covered other periods—and for a limited period of only several weeks. The rent adjustment sought is for a two-year period during which the tenant's daughter and son-in-law were occupying the apartment and the son-in-law enjoyed an income, as aforesaid, of some $11,000 per annum.

This court previously had occasion to consider the consequences of a tenant's failure to report true income. In *Matter of Newton v Municipal Housing Auth.* (47 AD2d 522) we dismissed a petition "based on findings that petitioner, *inter alia,* did not report certain income received during her tenancy in the premises."

The consequences inherent in affirming transcend the immediate issue. A note entitled "Procedural Due Process in Government-Subsidized Housing" (86 Harv L Rev 880, 891), although concerned primarily with housing financed by the Federal Housing Administration, discusses whether the ten-

ant's rights in these matters are constitutionally protected. It observes that there are three factors involved:

"Courts must weigh (1) the importance of the interests jeopardized, and (2) the appropriateness of the requested procedure in protecting those interests, against (3) the cost of requiring the procedure. * * * See, e.g., Morrissey v Brewer, 408 U.S. 471, 481-90, (1972); Bell v Burson, 402 U.S. 535, 539-42 (1971); Richardson v Perales, 402 U.S. 389, 401-07 (1971); Goldberg v Kelly, 397 U.S. 254, 263-71 (1970)."

The article notes further consequences (p 892): "There may be a danger that the government will be unable to recover funds paid out as benefits to recipients ultimately found ineligible. And in some cases there may be a possibility that serious harm to the general public will result from delay."

■ There is yet another intriguing facet to this litigation. The judgment dismissing the article 78 proceeding was entered on December 30, 1976. However, there is an antecedent summary proceeding pending which has been stayed pending the determination of this appeal. Thus, a summary proceeding for nonpayment of rent, by dint of petitioner's attorney's efforts, has been shorn of its summary character. The very issue now posed, i.e., the lawful amount of rent claimed to be due, could have been raised in the Civil Court, for it is a *sine qua non* in summary proceedings, if the defense is pleaded, that the landlord is put to its proof that the rent asserted is the lawful rent.

We note several of the observations set forth in the dissent. Initially, we have not suggested to petitioner an "alternative remedy" of a defense in a summary proceeding. Indeed, that proceeding preceded the instant article 78 proceeding and is still pending. It has been stayed abiding the resolution of this proceeding. Thus, there is available to the tenant an opportunity before a court of law—not an administrative hearing officer—to challenge the lawfulness of the rent alleged to be due.

■ Implicit in the dissent is the contention that the majority is denying petitioner an opportunity to rebut; and hence, that we are foreclosing the right to due process. Petitioner's daughter and son-in-law submitted receipts purportedly establishing their residence elsewhere, but the receipts covered other periods. Indeed, when petitioner's counsel displayed a lease as evidence that they had established a new residence, respondent reduced the rent. The tenant has had ample

opportunity to marshal and present his evidence. The informality of the occasion is not tantamount to denying opportunity or leave.

■ In our view, there is no justification for finding that "sharp specific issues of fact exist". On the contrary, the very record reflects only adroit maneuvers bereft of legal substance to enmesh the Housing Authority in inextricable procedural snags. The statistics we quoted were derived from *Burr (supra)*. Surely, to note in this novel case that the Housing Authority operates some 188 housing projects, containing 155,160 apartments, occupied by approximately 600,000 persons, is to illustrate the magnitude of the basic issue and the realities. As Mr. Justice OLIVER WENDELL HOLMES observed in *Moyer v Peabody* (212 US 78, 84): "But it is familiar that what is due process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation."

Lastly, the dissent postulates the existence of a common thread in *Escalera* (425 F2d 853, *supra*) and *Burr* (479 F2d 1165, *supra*). We find none. *Escalera* involved the eviction of a tenant for damages to the freehold. At bar, the tenant was under an affirmative obligation to report his income and increased occupancy so that the rent could be adjusted, i.e., increased or reduced. Petitioner did not do so. We see no sharp issue.

It would appear that the tenant's daughter and son-in-law never anticipated that the Housing Authority might cross-check their application and thereby become aware of both increased family income and occupancy. Nevertheless, there was ample and appropriate opportunity accorded to overcome and to explain their own admissions. There are neither "circumstances", "subject-matter" nor "necessities" compelling a "fair hearing" as envisioned by the dissent.

MOLLEN, J. (dissenting). I dissent and vote to reverse Special Term's dismissal of the petition and to direct the New York City Housing Authority to hold a hearing and to grant the petitioner an opportunity to refute the evidence against him and present evidence in support of his position before an impartial hearing officer.

I would first note that the majority, in its presentation of the factual background of this matter, accepts as proven facts the allegations of respondent despite the fact that neither the respondent nor Special Term ever conducted a hearing. Conse-

quently, there are no findings of fact presented in the record before this court, and appellant disputes respondent's allegations.

Special Term and my colleagues in the majority premise their upholding of respondent's determination upon their view as to the inapplicability of *Escalera v New York City Housing Auth.* (425 F2d 853). My colleagues further buttress their affirmance upon their interpretation of *Burr v New Rochelle Municipal Housing Auth.* (479 F2d 1165). I am compelled to disagree in both regards.

A careful analysis of *Escalera* and *Burr* leads to a directly contrary result, namely, that the holding in *Escalera* is applicable to the facts of this case and clearly supports the petitioner's position, and that the *Burr* case is inapplicable to the factual situation presented herein—conversely, dicta in *Burr* clearly points to support of petitioner's contentions, in the light of *Burr's* allusions to a contrary holding if the fact pattern had been similar to that present in the instant case.

The court in *Escalera* specifically addressed itself to three points. The first two, termination of a tenancy for nondesirability and termination for breach of rules and regulations, are not germane to the issue herein, except to the extent that they indicate the court's attitude towards requiring hearings before impartial hearing officers where specific factual issues exist between an individual tenant and the Housing Authority. However, the third point, " 'Additional Rent' Charges or Fines" (discussed at pp 860-864), is the precise issue presently before this court.

While the factual basis for the imposition of "additional rent" charges in *Escalera* differs from that in the instant case, nevertheless the principle underlying the procedures to be followed prior to the imposition of such additional rent charges should be deemed to apply equally in all instances where an actual and specific factual dispute exists between the tenant and the Housing Authority.

In discussing the procedures that should be followed, the court in *Escalera* declared (pp 863-864):

"The tenant should be notified in advance of the complete grounds for the proposed action; should have access to all the information upon which any decision will be based, and should be afforded the right to confront and cross-examine witnesses in appropriate circumstances. In addition, it would seem that the tenant should be afforded the opportunity to

present his side of the case in the presence of an impartial official, not merely to the project manager who instituted the proposed action against the tenant. Goldberg v Kelly [397 US 254] *supra,* at 271 * * * cf. In re Murchison, 349 U.S. 133, 136 * * * Wasson v Trowbridge, 382 F.2d 807, 813 (2d Cir. 1967); compare Administrative Procedure Act § 5, 5 U.S.C. § 554 (1966); Note, Public Landlords and Private Tenants: The Eviction of 'Undesirables' From Public Housing Projects, 77 Yale L.J. 988, 994, 1004-05 (1968).

"Although a full-fledged adversary hearing need not be afforded in all cases, the tenant must be adequately informed of the nature of the evidence against him and accorded an adequate opportunity to rebut the evidence. *Willner, supra,* 373 U.S. at 107 * * * (Goldberg, J., concurring). Indeed in the cases of violations of rules and regulations and of 'additional rent' charges, the evidence against the tenant is quite likely to come from third parties. In such cases, the tenant should be permitted to challenge the person supplying that evidence."

The clear import and thrust of *Escalera* is that in instances involving additional rent charges, where an issue of fact exists, the tenant is entitled to a fair hearing before an impartial official. Petitioner herein has not been afforded such an opportunity.

The issue in *Burr* was whether a formal and full adversary hearing was required prior to the promulgation by the Housing Authority of an across-the-board, generally applicable service charge or rent increase due to increased utility costs. The court held that in *such* a circumstance, a formal adversary hearing is not mandated (479 F2d, at p 1166): "Although we hold that due process requires certain procedural safeguards before an across-the-board rent increase can be imposed by a municipal housing authority, we do not agree that a formal adversary hearing with attendant procedures is necessary."

The court went on to make a clear distinction between those cases which involve a specific factual issue between a tenant and a Housing Authority (as is present in the instant case and in *Escalera)* and a general rent increase applicable to all tenants, as was true in *Burr.* The court stated (p 1169): "The questions involved in a rent increase do not turn on the resolution of specific factual issues on which the tenants as a group would have any special knowledge. The decision to raise rents requires rather the evaluation of complex financial data.

The rise in utility costs which occasioned the service charge in the present case must be evaluated within the context of the Authority's overall financial condition, the intricacies of project management, the possibilities of savings in some types of operations, and a hundred other intricate details."

The court also noted (p 1169): "Balancing the interests of the Authority in a summary procedure against the interests of the tenants and the type of procedure necessary to protect these interests, we hold that due process does not require an adversary hearing before a general rent increase or service charge can be imposed."

The court further clarified the distinction between the two types of cases, and indorsed in principle the applicability of the *Escalera* holding to factual patterns similar to the instant case (p 1169): "In a situation in which the individual rights of the tenant are directly affected, see Goldberg v. Kelly, 397 U.S. 254 * * * (termination of welfare benefits) a trial type of hearing is required and the opportunity to present oral evidence serves a real function. However, in a situation such as the instant case, we agree with the district court in Geneva Towers Tenants Organization et al. v. Federated Mortgage Investors et al. (N.D. Calif. January 8, 1972), that: '[T]he opportunity to present oral evidence is not particularly valuable where technical financial data is at issue. The "credibility" of conflicting data is not best resolved by evaluating the demeanor of witnesses; it is best resolved by independent agency investigation'."

Any doubt as to the distinction which might exist despite the foregoing is totally resolved in the court's footnote (p 1169, n 3): " 'Adjudicatory hearings serve an important function when the agency bases its decision on the peculiar situation of individual parties who know more about this than anyone else. But when, as here, a new policy is based upon the general characteristics of an industry, rational decision is not furthered by requiring the agency to lose itself in an excursion into detail that too often obscures fundamental issues rather than clarifies them.' WBEN, Inc. v. United States, 396 F.2d 601, 618 (2d Cir.), cert. denied sub nom. Kings Garden Inc. v. FCC, 393 U.S. 914".

Thus it is quite clear that *Escalera* and *Burr,* when analyzed together, are consistent with and in accord with one another. They establish that where a housing authority intends to promulgate a general across-the-board rent increase

based on increased operational costs or other grounds based upon analysis of technical data, a full adversary hearing is not required. However, they further establish that where a housing authority attempts to impose a rent increase upon an individual tenant based upon specific conduct of that tenant, and a factual issue exists as to that alleged conduct, then that tenant is entitled to a fair hearing before an impartial official.

The majority, in support of its position, cites and quotes from a note, "Procedural Due Process in Government-Subsidized Housing" (86 Harv L Rev 880, 891). However, a reading of the entire note discloses that two important distinctions render its thrust totally inapplicable to the instant proceeding. First, it reiterates a number of times that there is an important distinction between public housing cases and government-subsidized privately owned housing cases. The note then proceeds to concern itself solely with the latter. Second, the note makes the very same distinction, as did *Burr (supra)*, between instances where a specific factual issue exists between an individual tenant and a governmental landlord and those instances where the general rental rate-making power based on general economic conditions is involved. The note, in analyzing *Hahn v Gottlieb* (430 F2d 1243) points out as follows (86 Harv L Rev, at pp 897-898): "It characterized the process of FHA approval of a rent increase as 'rate-making,' turning on general economic conditions rather than specific factual disputes like those which might be involved in an eviction proceeding. It thus invoked the 'legislative/adjudicative' distinction and, considering it unlikely that tenants could contribute to a determination of such 'legislative' facts as their landlord's financial condition, the proper method of managing a project, or the state of the economy, decided that the full hearing sought would not contribute to an accurate resolution of the issues."

The majority, in concluding, has suggested an alternative remedy for appellant, namely, a defense in a summary proceeding for nonpayment of rent. Precisely this very contention was considered and totally rejected by the court in *Escalera* (425 F2d 853, 864, *supra)*: "The HA's argument that the 'additional rent' charges are provided for in the HA lease is not dispositive of the question of the fairness of the procedures under which said charges are imposed. Holloway v. Department of Housing and Urban Development, 418 F. 2d 242 (5 Cir. 1969); see Vinson v. Greenburgh Housing Authority, 29

AD2d 338 * * * leave to appeal granted, (1969). Nor is it persuasive in the posture of this case to argue that a tenant may challenge the additional rent charges by refusing to pay them and by defending in court against the HA's suit for nonpayment of rent. The cost of defending in court and the hazards envisioned by a public housing tenant in refusing to pay rent, would probably dissuade all but the boldest tenant from contesting an 'additional rent' charge in this manner. Nor can the small size of the 'additional rent' charges be relied on to deny tenants automatically fair procedures. To be sure, the size of the charges is relevant to the question of the burdensomeness of the required procedures, but even small charges can have great impact on the budgets of public housing tenants, who are by hypothesis below a certain economic level. See Goldberg v. Kelly, supra, 397 U.S. at 264".

Again the court stated (p 865): "We have already considered and rejected the HA's contention that the procedures for assessing 'additional rent' charges are cured by the opportunity of the tenant to defend a rent-collection action in the New York Civil Courts."

In a proceeding such as the instant one, where sharp specific issues of fact exist, a tenant is entitled to a fair hearing before an impartial hearing officer, so that the all-important issue of credibility will be subject to the crucible of cross-examination and ultimate determination by an impartial finder of the facts.

The majority, attempting to justify respondent's deprivation of the tenant's right to a hearing, venture into the area of speculation and conjure up the spectre of dire administrative and judicial burdens and consequences if such right were to be implemented. This is not a unique postulation. Through the years, in many areas of law, there has been raised as a seeming barrier to an individual's rights, the hobgoblin of severe administrative tribulations and/or the alleged impact upon the courts of the recognition of the rights of an individual to due process and fairness. Invariably, albeit at times all too slowly, when confronted with this supposed dilemma, judicial recognition has given pre-eminence to the right of due process to the individual.

*Escalera, Burr* and the principles of due process and fairness mandate a reversal.

COHALAN, J. P., and DAMIANI, J., concur with HAWKINS, J.;

MOLLEN, J., dissents and votes to reverse the judgment insofar as it is appealed from and remit the matter to the respondent for a hearing, with an opinion.

Judgment of the Supreme Court, Kings County, entered December 30, 1976, affirmed insofar as appealed from, without costs or disbursements.