Bonnie D. Ward appeals from the trial court's judgment, insofar as it condemned $14,373 to the general fund of the State of Alabama, in this action filed by the state pursuant to Ala. Code 1975, § 13A-12-30 ("Forfeiture of gambling devices and gambling proceeds"). We affirm.
The money in question was seized from Ward by agents of the Alabama Bureau of Investigation ("ABI") and was condemned by the trial court on the authority of § 13A-12-30(c), which provides:
 "Money used as bets or stakes in gambling activity in violation of this article [Chapter 12, 'Offenses Against Public Health and Morals,' Article 2, 'Gambling Offenses'] is forfeited to the state and by court order shall be transmitted to the general fund of the state."
Ward's sole argument on appeal is that the state failed to prove that the $14,373 had been used as bets or stakes in an illegal gambling operation.
It is familiar law that when a trial court has heard ore tenus evidence, as in this case, its findings based on that evidence are presumed to be correct and its judgment will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, those findings are found to be clearly erroneous. Furthermore, when a trial court does not make specific findings of fact concerning an issue, as in this case, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Robinson v. Hamilton,496 So.2d 8 (Ala. 1986).
The evidence shows that prior to the seizure of the money Ward had been closely associated with a professional gambler named Billy Parks. In fact, Ward eventually pleaded guilty to a charge of promoting gambling, a class A misdemeanor. See Ala. Code 1975, § 13A-12-22. A warrant for Ward's arrest was obtained after an undercover ABI agent, posing as a betting customer of Parks, received a payment from Ward at a restaurant in Birmingham for a bet that he had previously placed with Parks. A search of Ward's purse at the time of her arrest resulted in the seizure of $14,300 in cash, which had been divided into three bundles — two containing $5,000 each and one containing $4,300 — and placed in a bag from an Eckerd's drug store. Also found in Ward's purse were six envelopes, containing various amounts of cash. Four of these envelopes had inscriptions on the outside of them, such as "to 118," which indicated that they were payments to be made to certain individuals who had been identified numerically. (Ward makes no claim to this money.) Also taken from Ward's purse were two other envelopes — one inscribed on the outside "Bonnie # 1," containing $48, and the other containing $25, with a notion on the outside "Bonnie football pot: Alabama v. Georgia"; a note inscribed, "Giants minus 13, San. D. plus 3-1/2"; a number of checks, some of which had been written to the order of "cash" and some of which had been endorsed over to the bearer; three men's wristwatches; a promissory note; and a blank betting sheet. An envelope containing cash, similar to the ones seized from Ward's purse with numbers inscribed on the outside of them, was also seized *Page 583 
from Ward's automobile at the time of her arrest.
Ward claims that the $14,373 (i.e., the $14,300 wrapped in the three bundles; the $48 contained in the envelope inscribed "Bonnie # 1"; and the $25 contained in the envelope marked "Bonnie football pot: Alabama v. Georgia") is her money and that it is not the fruit of Parks's gambling operation. She testified that she had taken three bundles, each of which, she said, contained $5,000 in cash, out of her safe deposit box several days prior to her arrest to pay for furniture and appliances for her house and that she had spent $400 of that money by the time of her arrest; that she had won the $25 in a "football pot"; and that she had won the $48 at a horsetrack and that Parks had sent that money to her in the envelope inscribed with "Bonnie # 1" on it because, she says, she was Parks's "number one." Basically, Ward testified that although she knew about Parks's illegal gambling operation, she had no connection with it, and she explained her possession of the payoff envelopes and her payment to the undercover ABI agent as isolated occurrences.
The state maintains that Ward's testimony was simply not credible. It points to the fact that Ward testified that she had taken $15,000 out of her safe deposit box and spent $400 of it, but that $14,300, not $14,600, was discovered in her purse at the time of the arrest. The state also points to Ward's close association with Parks; to the fact that she made a payment directly to an undercover ABI agent; to her possession of envelopes containing payoffs to individuals who had placed bets with Parks; and to her possession of other items, such as men's wristwatches, checks, and a betting sheet, etc. The state argues that the only logical inference to be drawn from the evidence as a whole was that Ward was Parks's "money person."
Based on our review of the evidence in this case, and in accordance with the ore tenus standard of review, we cannot hold that the trial court's judgment is in error. The trial court could have found from the evidence that Ward was a money handler for Parks and that the money condemned had been used as bets or stakes in an illegal gambling operation.
Based on the foregoing, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ.