Sam Evans, doctor of chiropractic, appeals from an order of the circuit court affirming the decision of the Alabama Board of Chiropractic Examiners to suspend for 30 days his license to practice chiropractic therapy. After a hearing, the Board found Evans guilty of having sexual relations with a patient under his professional care, exploiting the patient or her health insurance carrier for financial gain,[1] and billing for services that were not performed, all in violation of § 34-24-166, Ala. Code 1975.[2]
The Board heard conflicting testimony about the duration of Evans's affair with the patient, whether the frequency of treatments allegedly performed was justified in light of normal chiropractic procedures, and whether Evans performed the treatments for which the insurance carrier was billed. Evans testified that he had performed those treatments for which he submitted billings, but that he had made a bookkeeping error while recording the specific dates of treatment. The record reveals that the patient was in the hospital and was unavailable for chiropractic treatment on two of the days that Evans billed as "treatment days." There was substantial, undisputed evidence that Evans had had sexual relations with his patient while treating her professionally.
Evans's only contention on appeal is that the Board's decision was "unreasonable, arbitrary or capricious," arguing that his right to an unbiased, impartial hearing was violated. William Whatley, the hearing officer for the Board, had held the position of assistant attorney general and counsel for *Page 264 
the Board. He had been actively involved in the investigation of Evans during that time. The husband of the patient with whom Evans had the affair was an investigator in the attorney general's office. The husband wrote a memorandum to Whatley suggesting that an investigation of Evans would reveal improper conduct. Also, Whatley wrote a letter to the Selma Police Department, requesting a copy of an incident report that would implicate Evans as being unfaithful to his wife.
Paraphrasing this court's statements in a case involving the Medical Licensing Commission, we note:
 "[The Board's] order is presumed to be prima facie just and reasonable. We may not substitute our judgment for that of the agency as to the weight of the evidence [on a] question of fact, nor could the circuit court substitute its judgment for that of the [Board]. Thus, if supporting evidence is found in the record, we are bound to affirm the order."
Evers v. Medical Licensure Comm'n, 523 So.2d 414, 415
(Ala.Civ.App. 1987).
"Appellate review of administrative actions is limited to a determination of 'whether the agency acted within its powers conferred upon it by law and the constitution, whether its decision is supported by substantial evidence, and whether the agency's decision is reasonable and not arbitrary.' " Jones v.State Bd. of Pharmacy, 624 So.2d 613, 614 (Ala.Civ.App. 1993) (citing Alabama Bd. of Nursing v. Herrick, 454 So.2d 1041, 1043
(Ala.Civ.App. 1984)).
It is well settled in Alabama that due process must be observed not only by the courts, but by all boards as well.Delavan v. Board of Dental Examiners, 620 So.2d 13
(Ala.Civ.App. 1992). "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." In re Murchison,349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). In cases where it is shown that the decisionmaker has a personal or pecuniary interest in the outcome, the probability of actual bias has been considered too high to be constitutionally tolerable. Withrow v. Larkin, 421 U.S. 35, 48, 95 S.Ct. 1456,1465, 43 L.Ed.2d 712 (1975).
However, the United States Supreme Court also said inWithrow:
 "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."
Id. at 47, 95 S.Ct. at 1464. Moreover, "The mere exposure to evidence presented in non-adversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." Id. at 55,95 S.Ct. at 1468. Nothing in the record suggests that the Board's findings of fact and conclusions of law were biased.
The trial court, in affirming the decision of the Board, made no specific findings of fact; it simply affirmed the action of the Board in suspending Evans's license. "[W]hen a trial court does not make specific findings of fact concerning an issue, . . . this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ward v. State,592 So.2d 581, 582 (Ala. 1992).
A thorough review of the record supports the findings of the Board. There was substantial evidence before the Board, and we agree with the trial court that the action of the Board was not arbitrary or unreasonable and did not otherwise deny due process.
AFFIRMED.
THIGPEN, J., concurs.
ROBERTSON, P.J., dissents.
[1] The Board determined that Evans's "written chiropractic records [did] not justify or substantiate the quality or number of chiropractic services or practices rendered by [Evans] to said patient, in violation of Rule 190-X-5-.08(2) and (3)(a),Rules and Regulations, Alabama State Board of Chiropractic Examiners."
[2] "The state board of chiropractic examiners may . . . revoke or suspend any license to practice chiropractic whenever the licensee shall be found guilty of . . . [i]mmoral, unprofessional or dishonorable conduct; [or] . . . [e]xploitation of patients by overutilization of chiropractic services." § 34-24-166(b)(2) and (13). *Page 265