YATES, Judge.
Hired Hand Green, Inc. (“Hired Hand”), sued James Knight, a/k/a Jimmy Knight d/b/a/ Four Seasons Greenhouse, on June 5, 1997, alleging a breach of contract arising out of the sale of a greenhouse and other materials. Knight answered and counterclaimed, alleging that Hired Hand had negligently constructed the greenhouse. Following an ore tenus proceeding, the court, on February 11, 1999, entered an order, stating, in part:
“1. The Court finds Hired Hand Green is entitled to the remaining balance under the contract, $18,000, plus a sales tax of $2,160 (computed at the rate of 6% on the total purchase price of $36,000), for a total of $20,160.
“2. The Court finds Hired Hand Green is entitled to $650.14 for [Knight’s] purchase of shade cloth materials and freight charges.
“3. The court finds Hired Hand Green has incurred $10,381.87 in attorney’s fees in this case. Pursuant to the contract between the parties, Hired Hand Green is entitled to attorney’s fees in collecting on any debts. The Court finds that Hired Hand Green is entitled to an attorney’s fee of $8,500.
“4. The Court finds for [Knight] on [his] counterclaim and awards [him] the amount of $8,000, which is set-off against the amounts [he] owes to Hired Hand Green under this judgment. [Knight is] not entitled to any consequential damages.
“5. The Court finds Hired Hand Green is entitled to a 1.5% per month charge on the past due balance under the contract ($20, 160), less the amount of [Knight’s] right to set-off ($8,000), for a period of 24 \ months (from February 1, 1997, through February 15, 1999), totaling $4,475.31. The charge does not apply to the past due balance on [Knight’s] purchase of the shade cloth material.
“It is therefore, ORDERED, ADJUDGED and DECREED that judgment shall be entered in favor of Plaintiff Hired Hand Green, Inc. and against Defendants, jointly and severally [sic], in the amount of $25,785.45. All costs are taxed against [Knight].”
Knight appeals.
Hired Hand is in the business of selling and manufacturing commercial greenhouses for retail customers. Knight owns and operates a business known as Four Seasons Greenhouse, which comprises 35 greenhouses throughout north Alabama. Knight contacted Shane Carden, a sales representative at Hired Hand, to inquire about purchasing a greenhouse. Knight and Carden met to discuss Knight’s requirements and the various types of greenhouses sold by Hired Hand. On August 1, 1996, Knight entered into a contract with Hired Hand for the purchase and construction of two 36’ by 96’ gutter-connected sawtooth greenhouses for $36,000. Separately, Knight also purchased from Hired Hand some shade-cloth material that was not included in the contract. The payment schedule required Knight to make a down payment of $18,000, with the *220 remaining balance of $18,000 being due upon completion of the construction of the greenhouse. Knight made the $18,000 down payment when the contract was signed.
The contract specified a number of features to be included in the greenhouse. The roof was to be made of two layers of polyethylene. The corner “pockets” of the greenhouse were to be constructed of polycarbonate. The greenhouse was also to include two sliding doors, two Hired Hand Super Saver XL vented heaters, gutters, and flashing. Finally, although the shade-cloth material had been purchased separately and was not included in the contract, the clips that are used to attach the shade cloth to the greenhouse were included in the contract.
Carden testified that the greenhouse was completed in early November 1996. Knight began selling plants out of the greenhouse at that time. Hired Hand, on December 17, 1996, submitted an invoice to Knight for the remaining balance owed under the contract. The invoice was for $20,160 and it specifically stated that this amount included sales tax in the amount of $2,160. Carden testified that on a number of occasion she attempted to collect from Knight the balance owed.
Knight testified that he had a number of complaints with the greenhouse and that he had requested Carden to meet him in order to make a “punch list” — a list of problems to be corrected. Knight’s complaints with respect to the greenhouse included the following: the shade cloth and clips had not been installed as agreed; the polycarbonate corner “pockets” had not been installed as agreed; the doors had an inferior locking system; the polyethylene roof was bagging and holding water; the two vented heaters and thermostats were not installed as agreed; the gutters did not have endcaps or downspouts; and the greenhouse was leaking air from a space above the door. Knight testified that he and Carden met in early April 1997 to discuss the complaints and to prepare the punch list. On April 16, 1997, Steven Cri-der, the president of Hired Hand, sent Knight a letter informing him that Hired Hand had received the punch list outlining the complaints and that Hired Hand would make the requested changes to the greenhouse. However, Crider informed Knight that these changes would be considered warranty work, which Hired Hand would complete upon Knight’s tendering the payment of the balance owed under the contract. Knight responded by letter on April 29, 1997, telling Hired Hand that when the requested work was completed he would tender a check for the balance owed under the contract. Knight did not pay the balance owed, and Hired Hand did not make Knight’s requested repairs. Knight ultimately paid to have a third party make some of the repairs.
We note that this case was tried without a jury and that the parties presented ore tenus evidence. Where a trial court’s judgment is based on ore tenus evidence, its judgment is presumed correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Myrick v. Gladish, 690 So.2d 435 (Ala.Civ.App.1997). Knight argues on appeal, as he did at trial, that the greenhouse was not constructed to the specifications in the contract and, therefore, that it had not reached the stage of “completion,” as provided by the contract, that would have obligated him to tender the balance due. He contends that the term “completion” is ambiguous, because it is not defined in the contract and, therefore, he argues, it should be construed against Hired Hand, the party that drafted the contract. “General rules of contract interpretation require that the intent of the parties be derived from the words of the contract, unless an ambiguity exists.” Ryan Warranty Services, Inc. v. Welch, 694 So.2d 1271, 1273 (Ala.1997). This court has stated:
‘Whether an agreement is ambiguous is a question of law for the trial court. When the agreement is reasonably sus *221 ceptible to more than one meaning, an ambiguity exists. Where an ambiguity exists, the trial court may admit parol evidence to explain or clarify the ambiguity. Once the trial court finds the agreement to be ambiguous in any respect, determination of the true meaning of the agreement is a question for the trial court.”
Bain v. Gartrell, 666 So.2d 523, 524 (Ala.Civ.App.1995) (citations omitted). The court made no specific findings with regard to whether the term “completion,” as it appeared in the contract, was ambiguous. “When a trial court makes no specific findings of fact, this court will assume that it made those findings necessary to support its judgment ‘unless such findings would be clearly erroneous.’ ” Aratex Services, Inc. v. Stan Messer Stores, Inc., 637 So.2d 1351, 1353 (Ala.Civ.App.1994), quoting Ward v. State, 592 So.2d 581, 582 (Ala.1992).
Both parties testified essentially that “completion” of the contract occurred when all the materials called for in the contract are properly installed pursuant to the agreement of the parties. However, the parties disagreed as to what materials were called for by the contract and what was actually installed in the greenhouse. The court heard disputed testimony in that regard. Knight testified that a number of the materials he specifically requested in the contract either were not installed or were improperly installed. This is the source of his complaints regarding the greenhouse. Hired Hand offered testimony indicating that Knight, after the contract had been made, had requested materials that were different from those called for by the contract. Hired Hand also presented testimony indicating that Knight had agreed to the installation of alternative materials, after it informed Knight during construction that the materials called for in the contract would not work. Further, Hired Hand offered testimony indicating that a number of Knight’s complaints regarding the greenhouse either came under the warranty or amounted to requests for improvements that were not included in the contract.
Knight offered a number of photographs that depict some of the complaints that he had regarding the greenhouse. These photographs depict, among other things, substantial puddling of water on the polyethylene roof. Knight stated that these photographs accurately represented the condition of the greenhouse in November 1996; however, on cross-examination he was unable to testify as to when these photographs were actually taken. Hired Hand presented photographs showing that the greenhouse was stocked with fall flowers, which suggested that the photographs had been taken at approximately the time when the construction of the greenhouse was completed. The testimony also indicated that these photographs were used in a Hired Hand advertisement brochure, which was distributed in December 1996. These photographs did not depict the substantial puddling of water that was shown in the photographs submitted by Knight. In fact, Knight testified that there was a “stark” difference between the two sets of photographs. The photographs submitted by Knight are consistent with Hired Hand’s contention that some of Knight’s complaints fall under the warranty provision of the contract.[1]
The court made no specific written finding as to whether the term “completion,” as it appears in the contract, is ambiguous; however, assuming that it did find the term to be ambiguous, we note that the court heard disputed evidence from which it could have concluded that the greenhouse had been completed in November 1996, pursuant to the contract; that Knight was operating the greenhouse; and that Knight was obligated to tender the balance due on the contract at that time. *222 See Bain, 666 So.2d at 524. Accordingly, after carefully reviewing the record, we cannot say that the court erred in entering a judgment in favor of Hired Hand on its breach-of-contract claim against Knight.
Knight next argues that the court erred in awarding Hired Hand an attorney fee and 1.5% interest on the past-due balance. The contract provides:
“A late payment charge will be made on all past due balances, and will be computed at the rate of 1.5% per month, (annual percentage rate of 18%) or the maximum legal rate, whichever is lower. Purchaser agrees to pay all costs of collection (including attorney’s fees) incurred by [Hired Hand Green] if this invoice is not paid when due.”
Knight argues that the greenhouse had not been completed and that the balance owed on the contract therefore never came due. He contends that because the balance on the contract never came due, the court erred in awarding Hired Hand interest on a past-due balance and an attorney fee for collection of that balance. We disagree. The contract clearly provides for an interest payment on a past-due balance and an attorney fee for collection of that balance. Because the trial court correctly found in favor of Hired Hand on its contract claim, Hired Hand was necessarily entitled to an award of interest on the past-due balance and an attorney fee for collection of that balance, pursuant to the clear terms of the contract.
Knight next argues that the court erred in awarding Hired Hand sales tax computed at a rate of 6% on the total purchase price of $36,000, for a total of $2,160. The contract provides:
“3. TAXES. Any taxes which [Hired Hand Green] may be required through assessment or otherwise to pay or collect under any existing or future law, upon or with respect to the sale, purchase, delivery, transportation, storage, processing, use or consumption or any of the products or services covered hereby including receipts from sales or services will be for Purchaser’s account, and if paid, or required to be paid by [Hired Hand Green], the amount thereof will be added to and become part of the price payable by the Purchaser.”
On the last page of the contract, which is entitled “Pricing,” there appears a box labeled “extended price,” which lists the total contract price of $36,000. Immediately below the box appears the following: “Note: Taxes are not included in any of the above pricing.” The contract clearly provides that Hired Hand is to collect sales tax on the transaction and that the stated contract price of $36,000 does not include sales tax. The contract is clear and unambiguous on this point; therefore, the court did not err in awarding Hired Hand an amount for sales tax on the transaction.
Although we conclude that the court did not err in awarding Hired Hand an amount for sales tax, we do find that the court erred in regard to the amount of the award. The total contract price of $36,000 included both the materials and the labor necessary to complete construction of the greenhouse pursuant to the contract. The contract does not indicate what amount of the $36,000 contract price was for labor and what amount was for materials. The parties stipulated that no sales tax is charged on labor; however, when the court computed the sales tax, it did so on the full contract price of $36,000, and, therefore, computed sales tax on labor. Accordingly, we must reverse this portion of the judgment and remand the case for the court to determine the proper amount of sales tax to be charged on the contract price of $36,000.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in the result.

. Hired Hand contends that the photographs were taken as much as six to eight months after the greenhouse had been constructed and that, after a period of time, certain warranty repairs are common with a greenhouse.