

# In the Court of Criminal Appeals of Texas

No. WR-77,175-05

EX PARTE RANDY ETHAN HALPRIN,

*Applicant*

On Application for Writ of Habeas Corpus
In Cause No. W01-00327-T(B)
In the 283rd District Court
Dallas County

YEARY, J., filed a concurring opinion.

Today, the Court grants Applicant a new trial because, it says, the trial judge was "actually biased" against him. Ultimately, I concur with the result reached by the Court. But I write separately to clarify what I believe is the controlling standard by which we are required to determine whether Applicant is entitled to a new trial.

## I. THE PROBLEM WITH *LITEKY*

Problematically, the Court's opinion relies on *Liteky v. United States* to reach the conclusion that the trial judge in this case was "actually biased" against Applicant. 510 U.S. 540, 555–56 (1994). Specifically, it "discern[s] no reason that *Liteky*'s basic reasoning . . . should not apply to a judge's pervasive patterns of speech and behavior outside of the courtroom." Majority Opinion at 6. But it ignores whether *Liteky*'s reasoning should apply at all.

To that end, I agree with Presiding Judge Keller that *Liteky* and *Berger v. United States* do not control. *See* Keller, P.J., Dissenting Opinion at 10–11. How could they? Applicant alleges a violation of due process, and due process is never mentioned in *Liteky* or *Berger*. Instead, both cases dealt with federal recusal statutes—not due process, which is the issue before this Court today. *Liteky*, 510 U.S. at 540; *United States v. Berger*, 255 U.S. 22, 23 (1921). Accordingly, the rationale on which the Court grants Applicant relief is misguided.

## II. THE CONTROLLING STANDARD

As an initial matter, the United States Supreme Court has said that "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'"[1] *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (quoting *In re Murchison* 349 U.S. 133, 136 (1995)). And while "most matters relating to judicial disqualification [do] not rise to a constitutional level," *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948), "[d]ue process guarantees 'an absence of actual bias' on

---

[1] *See* U.S. CONST. amend. XIV, § 1 (requiring that no "State deprive any person of life, liberty, or property, without due process of law."

the part of a judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (quoting *Murchison*, 349 U.S. at 136).

But, of course, "[b]ias is easy to attribute to others and difficult to discern in oneself." *Id.* Knowing this, the United States Supreme Court established "an objective standard that, in the usual case, avoids having to determine whether actual bias is [actually] present." *Id.* Specifically, that Court has said that a judge is required to recuse under circumstances where "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 877 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The Supreme Court explained that the question is "not whether the judge is actually, subjectively biased, but whether the average judge in [the challenged judge's] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'"[2] *Id.* at 881. And the Supreme Court has consistently stood by

---

[2] Presiding Judge Keller seems to argue that, pursuant to *Caperton*, relief is only appropriate in "two instances." *See* Keller, P.J., Dissenting Opinion at 5–6 ("Critically, the Supreme Court has identified only two types of interest that can establish inferred bias: financial interest and conflict of interest."). But this reading of *Caperton* seems mistaken to me; it appears to align more with the views espoused in a dissenting opinion in that case. *See Caperton*, 556 U.S. at 890 (Roberts, C.J., dissenting) ("*Until today*, we have recognized exactly two situations in which the Federal Due Process Clause requires disqualification of a judge: when the judge has a financial interest in the outcome of the case, and when the judge is trying a defendant for certain criminal contempts.") (emphasis added). Indeed, *Caperton*'s only limiting principle was that the decision addressed "an extraordinary situation" and that the standard would be "confined to rare instances." *Id.* at 887, 890; *see id.* at 891 (Roberts, C.J., dissenting) ("The Court's new 'rule' provides no guidance to judges and litigants about when recusal will be constitutionally required.").

that standard.[3] *See Williams*, 579 U.S. at 9–11 (explaining that, under the [14th Amendment] Due Process Clause, there was an impermissible risk of actual bias when a judge had previous significant, personal involvement as a prosecutor); *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (reversing the Nevada Supreme Court because it did not apply the controlling standard—"whether, considering all the circumstances alleged, the risk of bias was too high to be constitutionally tolerable").

### III. APPLYING THE CONTROLLING STANDARD

Having identified the controlling standard, I turn next to the specific circumstances and allegations of this case to determine "whether the risk of bias was too high to be constitutionally tolerable." *Rippo,* 580 U.S. at 287.

In the present case, as pointed out by this Court's per curiam opinion, uncontradicted evidence exists that, after the trial judge learned that he would preside over the trial of five of the Texas Seven members, he expressed that his appointment was significant "because [he was] going to get them all the death penalty, even the driver because

---

[3] I am sympathetic to the views espoused by Chief Justice Roberts, Justice Thomas, Justice Alito, and the late Justice Scalia, arguing that the Supreme Court deviated from what due process requires. *See Caperton*, 556 U.S. at 890 (Roberts, C.J., dissenting); *id.* at 902 (Scalia, J., dissenting); *Williams*, 579 at 17 (Roberts, C.J., dissenting); *id.* at 24 (Thomas, J., dissenting). But the Supreme Court's majority opinion pronouncements about federal constitutional law are binding on this Court. *See Ex parte Evans*, 537 S.W.3d 109, 111 (Tex. Crim. App. 2017) ("The ultimate authority on federal constitutional law is the U.S. Supreme Court."). So—while the majority of the Supreme Court might have departed from the original understanding of due process in the context of judicial disqualification—we are bound to follow its decisions, at least until its own subsequent decisions dictate otherwise. *Id.*

he's guilty." Majority Opinion at 7. Further, before and during his time as a judge, he repeatedly used derogatory language regarding Jewish people generally. And even worse, albeit outside of the courtroom,[4] both *during* and after Applicant's trial, the judge also made anti-Semitic remarks *specifically about Applicant*, who is Jewish.

Here, the trial judge's predisposition to "get them all the death penalty" suggests a likelihood of bias. In *Williams*, the Supreme Court explained that a judge's impression acquired through having formerly prosecuted a case prior to presiding over it as a judge was problematic. This case is similar, and in some respects even worse. The trial judge seems to have made comments—while serving as the judge on the case, but again, not in the courtroom—suggesting that he would work to secure a judgment *in this case* consistent with his own personal impression of the proper outcome. Beyond having a mere personal view regarding the proper outcome of this case, the trial judge here explicitly expressed an interest in this very case's outcome—that he would "get them all [including Applicant] the death penalty." If a prosecutor's prior involvement in a case—as in *Williams*, for example, where the judge previously participated in litigating the case himself—suggests a likelihood of bias, surely a judge's prior statement regarding a result of the case he intended to secure also suggests a likelihood of bias. *See Williams*, 579 U.S. at 16 (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238,

---

[4] It matters not whether the statements were made inside or outside of the courtroom. To the extent that considering out-of-court statements "breaks new ground," Keller, P.J., Dissenting Opinion at 12, no precedent precludes it. To the contrary, recent precedent might even require it. *See Rippo*, 580 U.S. at 287 (requiring consideration of "*all* the circumstances alleged") (emphasis added).

242 (1980)) (explaining that due process entitled the party to "a proceeding in which he may present his case with assurance" that a judge is not "predisposed to find against him").

Further, here, the trial judge made anti-Semitic remarks specifically *about Applicant*, outside the courtroom, but both *during* and after the time period in which he presided over Applicant's trial. This case is not like *Aetna Life Ins. Co. v. Lavoie*, where the Supreme Court suggested that more general allegations of bias and prejudice were insufficient to establish a constitutional violation. 475 U.S. 813, 822 (1986) (explaining that "Appellant concedes that nothing in the record even suggests that these justices [other than Justice Lavoie] had any knowledge of the [specific] class action before the court issued a decision on the merits" and that "[a]ny interest that they might have had when they passed on the rehearing motion was clearly highly speculative and contingent"). Instead, the trial judge made specific, derogatory remarks about Applicant. Those kinds of targeted comments *about Applicant* suggest a high likelihood of bias toward Applicant as a party.

And the fact that, here, the trial judge's comments were clearly directed at Applicant *as a party* might serve as a limiting principle for similar claims. By this opinion, I do not mean to suggest that any time evidence shows that a trial judge has—in the past—used off-color or even somewhat bigoted language, in a more general sense, any judgment signed by that judge must necessarily be reversed. But the trial judge's statements in this case suggested that he held a personal animus toward *this Applicant*, both because he thought he was guilty and should be sentenced to death, and because he held specifically prejudicial views

toward *Applicant's status* as a Jewish person. Surely, it seems to me, this is an example of "an extraordinary situation where the Constitution require[d] recusal." *Caperton*, 556 U.S. at 887.

In this case, the trial judge made statements that expressed a predisposition toward a particular outcome in Applicant's case. He also made direct, derogatory and demeaning statements *about Applicant* as a member of a constitutionally protected class. These were not merely speculative and contingent suggestions of possible bias harbored generally by the trial judge, which the judge might have been able to set aside during the course of the trial itself. The judge's statements specifically targeted Applicant because of the judge's belief that Applicant deserved a death sentence and because of the judge's clearly stated prejudice against Applicant as a Jewish person. Accordingly, I can only conclude that Applicant was subjected to a likelihood of bias that was "too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 877 (quoting *Withrow*, 421 U.S. at 47).

## IV. CONCLUSION

There is no need in this case to be guided by excess emotion over the trial judge's statements and behavior. There is also no need to rely on an abundance of hyperbole. The required result in this case can be reached simply by applying the controlling precedent as announced by the United State Supreme Court, even as recently as in 2017, in *Rippo*. 580 U.S. at 287. Given the trial judge's specific preconceived notion about—and apparent interest in—the result of the Applicant's own trial, considered along with the trial judge's specific expressions of bias and prejudice against Applicant because of Applicant's constitutionally

protected status as a Jewish person, the risk of bias in this case was simply too high to be constitutionally tolerable.  Reversal is therefore required.

Because the Court's per curiam opinion applies the wrong standard before ultimately arriving at the correct result, I concur only with the Court's decision to grant relief.


**FILED:**                                           November 6, 2024
**PUBLISH**